# Richmond

HENRY JAMES SIGMON v. COMMONWEALTH OF VIRGINIA.

October 13, 1958.

Record No. 4875.

Present, All the Justices.

The opinion states the case.

*B. A. Davis, III (B. A. Davis, Jr.,* on brief), for the plaintiff in error.

*John W. Knowles, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

█ The sole question presented in this appeal is whether, under the facts and circumstances hereinafter stated, the provisions of § 19-232, Code of Virginia, 1950, entitle the plaintiff in error, Henry James Sigmon, to immunity from prosecution in the Circuit Court of Appomattox County, Virginia, for the specific offense here involved. Code § 19-232 reads as follows:

"If the same act be a violation of two or more statutes, or of two or more municipal ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others. Furthermore, if the same act be a violation of both a State and a federal statute a prosecution or proceeding under the federal statute shall be a bar to a prosecution or proceeding under the State statute."

The case has been presented to us upon an agreed stipulation of facts, a summary of which follows:

Henry James Sigmon, hereinafter referred to as the defendant, along with John Saunders, was apprehended and arrested while engaged in the unlawful manufacture of alcoholic beverages at an unlicensed distillery. The arresting officers were H. C. Matthews, State Alcoholic Beverage Control Investigator, C. P. Tucker, a Federal Agent of the United States Internal Revenue Service, and W. S. Conner, a Deputy Sheriff of Appomattox County.

Sigmon and Saunders were taken to the Town of Appomattox, where it was agreed by the Commonwealth's Attorney of Appomattox County, Matthews, the State agent, and Tucker, the Federal agent, that both prisoners would be turned over to the Federal authorities for the disposal of the charges against them under federal statutes, in the United States District Court for the Western District of Virginia.

The arrested men were taken in custody to Lynchburg, Virginia, and lodged in jail overnight, August 20, 1957, as Federal prisoners. The next day a Federal warrant was sworn out against them by Tucker, the warrant being issued by the United States Commissioner. Brought before the Commissioner, Saunders was dismissed for lack of evidence, and Sigmon, having waived a preliminary hearing, gave bond before the Commissioner in the sum of $1,000 for his appearance in the United States District Court at Lynchburg on January 13, 1958. The Federal warrant charged Sigmon with the violation of sections 5174(a), 5180, 5606, 5216, 5632, and 7301 of Title 26, U. S. C. A., all of which sections relate to the illegal manufacture, removal and concealment of distilled spirits, including the same offense for which Sigmon was tried in the Circuit Court of Appomattox County.

On November 10, 1957, a Federal grand jury, convened at Roanoke in the Western District of Virginia, returned two indictments charging Sigmon with unlawfully distilling in Floyd and Franklin Counties, Virginia, on May 31, 1957 and July 15, 1957, respectively. On November 10, 1957, Sigmon pleaded guilty to each of those two indictments, and the cases were heard by the Court without a jury. The Court was then advised, in open court, of the charges then pending in that court against Sigmon for the Appomattox offense, and requested by the Assistant United States Attorney, that in determining the sentence to be imposed upon Sigmon for the offenses of May and July, it take into consideration the facts of that violation. The United States District Court then sentenced Sigmon to be placed on probation for a period of three years.

In the meantime, no warrant or charge for violation of the State law was sworn out against Sigmon in Appomattox County. Subsequently, Matthews, the State A. B. C. Investigator, not being "satisfied with the disposition of the Sigmon case" by the Federal Court "proposed and instigated the prosecution of Sigmon in the Circuit Court of Appomattox County." In December, 1957, Matthews and Federal Agent Tucker appeared before the grand jury of the Circuit Court of Appomattox County, and the grand jury, after hearing their testimony, returned a true bill indicting Sigmon for feloniously and unlawfully manufacturing alcoholic beverages in Appomattox County, Virginia, on August 20, 1957, in violation of "Chapter 1 of Title 4 of the 1950 Code of Virginia, and amendments thereto." A capias was issued for Sigmon. He was arrested and bailed for his appearance on January 10, 1958, in the Circuit

Court. No prosecution has been commenced against John Saunders by the State of Virginia.

On January 10, Sigmon filed a written motion in the Circuit Court to quash and dismiss the indictment against him on the ground that he had already been prosecuted and proceeded against in the United States District Court for the same offense and had been punished by that Court for that offense. The motion was overruled, Sigmon excepted, and his trial proceeded. Upon his arraignment, Sigmon entered a plea of not guilty, waived a trial by jury and, with the consent of the Attorney for the Commonwealth, submitted the case to the Court.

After hearing the evidence of the Commonwealth, the defendant again renewed his motion to quash the indictment and discharge him, on the ground that § 19-232 was a "complete bar to his prosecution in the Circuit Court." The motion was overruled and Sigmon duly excepted. Sigmon thereupon, with the consent of the Court, introduced in evidence a certified copy of the Federal warrant issued for him on August 21, 1957, a certified copy of the bond taken by the United States Commissioner for his appearance at the January term of the United States District Court, and a letter dated December 23, 1957, from Thomas J. Wilson, Assistant United States Attorney for the Western District of Virginia, relative to the incidents of the hearing in the Federal Court on November 10, 1957. In this letter, the Federal prosecutor stated that he did not present all of the cases pending in the United States Court against Sigmon "as a matter of convenience to our office in avoiding duplication of prosecutions." He further said: "It is our practice to call to the Court's attention other violations, and that was done in the case of Sigmon. The Court had before it information concerning the Appomattox County violation, and was requested to take into consideration the other violations in passing sentence."

The Commonwealth then introduced a letter dated January 3, 1958, from Wilson, responding to an inquiry from the Commonwealth's Attorney of Appomattox County. In this letter, the Federal prosecutor again recited the incidents of the trial of Sigmon at Roanoke in November, 1957, and wrote, in addition, the following:

"At the time of Sigmon's arrest in Appomattox County, there were two other distilling charges pending against him in our office for violations in Floyd and Franklin Counties on May 31, 1957 and

July 15, 1957, respectively. Both of those cases were Roanoke cases for disposition at the November term here.

"The Appomattox County violation was committed in the course of a conspiracy with several other persons. While Sigmon was an important part of the conspiracy, I do not consider him one of the principal defendants. I was informed that Sigmon is an alcoholic and had made several trips to the Western State Hospital at Staunton because of it. Since we had two cases pending against him, I decided it was not worth while to proceed against him at Lynchburg either on the distilling charge or on the conspiracy charge, but instead, requested the Court at Roanoke in November to take into consideration the other violation in passing sentence on the two distilling charges at Roanoke.

"To the surprise of everyone, Judge Paul placed the man on probation for three years. I recall that he pleaded a distressing family situation and assured the Court he would move out of the whiskey country in Franklin County and stay out of the business. The Judge, I believe, decided he would take a chance on Sigmon's getting out of the business and staying out.

"Since the Judge saw fit to put him on probation and at the same time had before him information concerning the Appomattox County violation, we do not intend to proceed against him further.

"For your information, however, if it appears from reliable information that Sigmon violates his probation, I feel certain Judge Paul will revoke it without the necessity of him being actually caught in a violation."

The stipulated facts further recite "that the evidence shows that Judge Paul (U. S. District Judge) took into consideration the Appomattox County case in fixing the punishment of Sigmon and the two prior cases when they were heard in the Federal Court," and that "The letters of the Assistant District Attorney clearly indicate that they do not intend to present an indictment to the grand jury (Federal) charging Sigmon with the Appomattox County violation."

At the conclusion of the hearing, the Circuit Court found Sigmon guilty and sentenced him to eighteen months in the State Penitentiary and the payment of a fine of $1,000. Sigmon excepted and moved the Court to suspend the execution of his sentence to give him an opportunity to apply for a writ of error, and sentence was suspended for a period of ninety days.

On January 31, 1958, the Circuit Court entered an order reciting,

"It being brought to the attention of the Court" that there was error in its order of January 10, 1958, in imposing both a penitentiary sentence and fine, contrary to Code § 4-57, the order of January 10th is hereby "changed to read that the accused be confined in Jail for a period of twelve months, and pay a fine of One Thousand Dollars."

Sigmon asks us to reverse the judgment of conviction entered January 10, 1958, and amending order of January 31, 1958, relying upon the provisions of § 19-232, Code of 1950. In reply, the Commonwealth contends that there "has been no Federal prosecution or proceeding within the purview of § 19-232," and that, "The United States Court has waived whatever jurisdiction it might have assumed."

The Commonwealth has raised no objection as to the form and sufficiency of the motion to quash, either in the trial court or in this Court. It has been apparently treated as a plea of former jeopardy, although it was not sworn to. A defense under the provisions of § 19-232 is not exactly one of former jeopardy, yet, by virtue of that section, it amounts to such a defense in purpose and desired effect. In this instance, it will be considered as sufficient to be treated as a plea of former jeopardy under the above section. However, it will be well to bear in mind that a mere motion to dismiss or quash is not sufficient to constitute a plea of former jeopardy. We have repeatedly held that such a defense must be raised by a formal plea in writing, duly sworn to, and setting forth all the facts and circumstances necessary to identify the accused and the offense. *DeBoer* v. *Commonwealth*, 147 Va. 671, 137 S. E. 469; *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. 2d 509; *Driver* v. *Seay*, 183 Va. 273, 32 S. E. 2d 87; *Reaves* v. *Commonwealth*, 192 Va. 443, 65 S. E. 2d 559; 2 M. J., Autrefois, Acquit and Convict, sections 22, *et seq.*

█ Code, § 19-232 first appeared as § 4775, Code 1919. Originally it read: "If the same act be a violation of two or more statutes, or of two or more municipal ordinances a prosecution or proceeding under one of such acts or ordinances shall be a bar to a prosecution under the other or others." It was amended in 1920, Acts of Assembly, 1920, page 99, by striking out of the first clause of the section the words "a prosecution or proceeding," and substituting therefor the word "conviction," so that a mere prosecution or proceeding which did not result in a conviction did not bar another prosecution in a State Court. At the same time, the statute was further amended by the addition of the following sentence: "Furthermore, if the same act

be a violation of both a State and Federal statute, a prosecution or proceeding under the Federal statute shall be a bar to a prosecution or proceeding under the State statute."

The section was again amended in 1948, Acts 1948, page 109, and there was added to the first sentence of the Act after the words "municipal ordinances" the phrase "or of one or more statutes and also one or more ordinances."

Here, however, it is under the second sentence in the amendment of 1920 that Sigmon claims immunity from State prosecution.

Had the legislature intended to require that there should be a conviction, acquittal, or other disposal by the Federal Court of the violation charged, it would have so provided. It presumed that a prosecution or proceeding for the violation of a Federal statute, having been commenced in the Federal court, would be carried to a final determination in accord with Federal statutes and justice.

It is significant, we think, that while the first sentence of § 4775, Code 1919, originally provided that "a prosecution or proceeding under one" act or ordinance should be "a bar to a prosecution" under other acts and ordinances covering the same offense, the amendment in 1920 required a conviction under the same circumstances to constitute a bar to another prosecution, with the added provision that if the same act be a violation of both a State and Federal statute, "a prosecution or proceeding under the Federal statute shall be a bar to a prosecution or proceeding under the State statute."

In *Owens* v. *Commonwealth*, 129 Va. 757, 105 S. E. 531, decided in 1921, shortly after the 1920 amendment became effective, the Court reviewed the history of § 19-232, calling attention to the revisers' note to § 4775, Code of 1919, reaffirmed the principles of comity and general practice, and, in the light of the situation in 1920, relating to the enactment and enforcement of laws concerning alcoholic beverages, ascertained the legislative purpose in amending the statute. Said this Court referring to the General Assembly of 1920:

"They doubtless also had in view the fact that under the Federal and State statutes regulating the sale of intoxicating liquors, offenders were liable to prosecution in both jurisdictions for the same act, and therefore they enlarged the scope of the statute so as to include prosecutions in the Federal courts. They were apparently unwilling in such cases to leave an accused person who was being prosecuted in the State courts subject to the discretionary comity to which the revisers alluded to in the note, but preferred in such cases to make

the prosecution in the Federal courts an absolute bar to another prosecution in the State courts, so that what before rested in the discretion of the trial court is mandatory upon the State courts in such cases." 129 Va. at page 760.

In that case, the defendant was arrested by State officers for a violation of a State prohibition statute, examined by a justice of the peace, and recognized for his appearance at the next term of the Circuit Court of Dickenson County. Before the commencement of that term, he was indicted for the same offense in the United States Court for the Western District of Virginia. Upon his trial in the Circuit Court, he rested his defense on the ground that the Federal indictment was a bar to his prosecution by the State. It was claimed by the Commonwealth that the statute "only referred to prosecutions in the Federal court which have been commenced before the State court takes jurisdiction of the case." 129 Va. at page 761. Taking note of the fact that the State court had taken jurisdiction before the Federal court, Judge Prentis stated the difficulties which would arise to impede and embarrass the administration of the criminal laws of the State, if it were required that it delay a prosecution waiting to ascertain whether or not an accused person would be prosecuted under the Federal statute for the same offense. The conclusion was then reached that the State court, having first taken jurisdiction, had priority and the right to conclude the litigation.

In reaching this conclusion, this Court then made the following statement, which we think controls the disposition of the present case:

"Bearing in mind that the general rule has always been that where courts have concurrent jurisdiction, the court which first takes jurisdiction always has priority and the right to conclude the specific litigation, we assume that the legislature did not intend by the ambiguous language used to change this general and salutary rule. *We, indeed, have no doubt, in view of these considerations, that the legislature only intended by the amendment to provide that if, when a prosecution under a State law was commenced, the accused could show that before that time there had been a prosecution or proceeding against him under a Federal statute for the same act, then that the prosecution in the State court should be barred, thus requiring as a matter of law what had theretofore rested within the discretion of the courts as a rule of comity.* Thus construed, the

statute imposes no undue restraint upon prosecutions either under the Federal or the State law, and at the same time effectuates the true legislative purposes sufficiently manifested by the act." 129 Va. at pages 761 and 762. (Emphasis added.)

It may be here observed that the legislature has not seen fit to amend the second sentence of § 19-232 since the above decision.

It is manifest that Code, § 19-232 contained in the Chapter entitled "Criminal Procedure," relates especially to criminal prosecutions or proceedings. The key words in the section are "prosecution or proceeding." While they embrace in some respects the same definition, they are not synonymous. Neither word is technical and "proceeding" has a broader meaning.

In *Flanary* v. *Commonwealth*, 113 Va. 775, 75 S. E. 289, we construed the word "proceeding" as broad enough to designate an inquiry before a grand jury. We held, under a statute which provided that no witness giving evidence "in any prosecution or other proceeding" under that act, shall ever be proceeded against for any offense against that act, that, if a witness was called upon to testify before a grand jury in any proceeding before that body, although there may be no indictment, presentment, or information, but merely an inquiry requested by the grand jury itself as to the violation of that act, the witness is entitled to invoke the benefit of the statute which shields him from prosecution. We said:

"It is the scope and extent of the inquiry, and not the use which was subsequently made of the information thus elicited, with which we are concerned, and which is to determine whether or not the witness was brought within the terms of the immunity embraced" in the statute. 113 Va. at page 783.

In *Hale* v. *Henkel*, 201 U. S. 43, 66, 50 L. ed 652, 662, 26 S. Ct. 370, the Court construing the word "proceeding" in a United States statute which provided immunity from prosecution to a witness testifying in certain cases, said: "The word 'proceeding' is not a technical one and is aptly used by the courts to designate an inquiry before a grand jury."

In *Burger* v. *S. Female Normal School*, 114 Va. 491, 496, 77 S. E. 489, a civil action, we said:

"* * * *proceeding* is defined by Blackstone to be the course of procedure in the prosecution of an action at law."

In *Miller* v. *Whittington, et al.*, 87 W. Va. 664, 105 S. E. 907 an action in chancery, the court held, in construing a statute which

authorized a case to be struck from the docket, in which for more than four years there had been "no order or proceeding therein other than to continue the same for more than four years" that the word "proceeding" included anything done in the cause, except an order of continuance; meaning any step or means taken in the prosecution or defense of an action.

In *State* v. *Williams*, 192 La. 713, 189 So. 112, 122 A. L. R. 665, it was held that a constitutional provision of Louisiana that "Prosecution shall be by indictment or information does not mean that it requires an indictment or a bill of information to mark the beginning of a prosecution." Said the court: "A prosecution consists of the series of proceedings had in the bringing of an accused person to justice, from the time when the formal accusation is made, by the finding of an affidavit or a bill of indictment or information in the criminal court, until the proceedings are terminated." (Citing *Tennessee* v. *Davis*, 100 U. S. 257, 269, 25 L. ed 648, 652, and a number of other cases.)

In common and ordinary acceptation, according to the definition given by lexicographers, and authorities generally, the word "prosecution" means the institution and carrying on of a suit or proceeding to obtain or enforce some right or the process of trying formal charges against an offender before a legal tribunal.

In criminal law, it is the means adopted to bring a supposed criminal to justice and punishment by due course of law, and consists of a series of proceedings from the time formal accusation is made by swearing out a warrant, the finding of an indictment or information in a criminal court, the trial, and final judgment. See Webster's New International Dictionary, Second Edition, Black's Law Dictionary, DeLuxe Ed., Ballentine's Law Dictionary, Words and Phrases, Permanent Edition, Volume 34 A, Criminal Prosecution, pages 489 *et seq.*, and cases cited.

In general, the same authorities define "proceeding" as broad enough to cover any act, measure, step or all steps in a course taken in conducting litigation, civil or criminal. See Words and Phrases, Volume 34, page 162; 1 C. J. S., Actions, pages 956-7; and 1 Am. Jur., Actions, pages 405-6.

The Commonwealth concedes that a "prosecution" before a Federal tribunal is ordinarily begun in much the same manner as in the criminal courts of this Commonwealth. Title 18, U. S. C. A. clearly sets out the "Scope, Purpose, and Construction" of the

Federal Rules of Criminal Procedure governing the procedure in the Courts of the United States and before United States Commissioners in all criminal proceedings, with the exception stated in Rule 54. The word "proceedings" includes each and every step from the issue of a criminal complaint to the conclusion of the case. Rule 3, relating to the complaint; Rule 4, to the warrant or summons issued upon complaint; and Rule 5 entitled "Proceedings before the Commissioner" are all contained under the general heading "Preliminary Proceedings." Under Rule 5, there is set out in subsections (a), (b), and (c) the duty of the arresting officer; the proceedings before the Commissioner; the duty of the Commissioner; and the rights of the defendant. It is then provided that, "After concluding the *proceeding* the commissioner shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him." (Emphasis added.)

We are not here concerned with the scope of the proceeding against Sigmon under the Federal statute, nor with what the Federal Court has determined, or will determine, in the case against Sigmon; but with the question whether or not the action taken by the Federal authorities constituted a "prosecution or proceeding under the Federal statute," and brought Sigmon within the terms of the immunity embraced in the second sentence of § 19-232.

The provisions of the statute cannot be rendered ineffective merely because some State or Federal officer may be disappointed or disgruntled over the action taken by the court first assuming jurisdiction. The test is not whether the accused be convicted or acquitted. A prosecution in the State Court is barred if a "proceeding," a step in the process of prosecution, under the Federal statute, has been first begun against him.

It seems clear that Sigmon having been arrested, confined in jail under a Federal warrant, having appeared before a United States Commissioner and waived preliminary hearing, having been held under bond to answer in the United States District Court, and having had the facts of the charge against him stated to the Federal judge for consideration in fixing his punishment for other offenses, has been subject to a "proceeding under the Federal statute," prior to any proceeding begun against him in the State Court.

It is fairly obvious, we think, that the first sentence of § 19-232, requiring a conviction under "two or more statutes, or of two or more municipal ordinances, or of one or more statutes and also one

or more ordinances," which cover the same act or offense, to constitute a bar to a prosecution or proceeding under the other or others, applies only where State statutes and municipal ordinances are involved. See *Kelley* v. *County of Brunswick*, 200 Va. 45, 49, 104 S. E. 2d 7; *Hundley* v. *Commonwealth*, 193 Va. 449, 69 S. E. 2d 336.

We find no merit in the contention of the Commonwealth that the Federal Court has waived whatever jurisdiction it might have assumed. It is a stipulated fact "that the evidence shows that Judge Paul (United States District Judge) took into consideration the Appomattox County case in fixing the punishment of Sigmon in the two prior cases." While the Assistant United States Attorney has said that in view of that, his office did not intend to proceed against Sigmon further, he also said that "If it appears from reliable information that Sigmon violates his probation, I feel certain Judge Paul will revoke it without the necessity of him being actually caught in a violation." He does not say that the warrant against Sigmon for the Appomattox County violation has been or will be dismissed without further proceeding. What he does say, in effect, is that proceedings on the warrant have been halted, and may be later considered. Sigmon is, and has been, continually since his arrest under the warrant for the Appomattox County violation, subject to further prosecution and proceeding in the Federal Court, if the District Attorney changes his mind or the United States Court directs a trial. The agreed facts show that the State here yielded jurisdiction.

For the reasons stated, the judgments complained of will be reversed and set aside, and the indictment and proceedings against the plaintiff in error dismissed.

*Reversed and final judgment.*