Salem

MICHAEL O'MARA BILLINGTON

v.

COMMONWEALTH OF VIRGINIA

No. 1927-89-3

Decided December 3, 1991

COUNSEL

Susan Wolfe (John K. Zwerling; Zwerling, Mark, Sutherland, Ginsberg & Lieberman P. C., on brief), for appellant.

John B. Russell, Jr., Senior Assistant Attorney General (Mary Sue Terry, Attorney General; Leah A. Darron, Assistant Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—This criminal appeal is from convictions relating to securities fraud. Michael Billington (appellant) contends that his convictions are barred under Code § 19.2-294 because of prior federal proceedings based on the same acts. We hold that the acts upon which these convictions were based were not the same acts upon which the federal proceedings were based and, therefore, his convictions are not barred by Code § 19.2-294.

On February 17, 1987, Billington was indicted on eight felony counts of violating the Virginia Securities Act, Virginia Code § 13.1-501 *et seq.* On September 9, 1988, the original indictment was amended, and Billington was further charged with conspiracy to commit securities fraud in violation of Virginia Code §§ 13.1-501 *et seq.* and 18.2-22. Billington was tried by a jury which found him guilty on October 24, 1989. On December 1, 1989, Billington was sentenced to a total of seventy-seven years imprisonment.

Billington worked as a member of the "National Center Phone Team" located in Boston, New York, and ultimately in Leesburg, Virginia. The objective of the group was to solicit contributions and loans on behalf of entities or organizations affiliated with, and supporting the political cause of, Lyndon LaRouche. Generally, loans were solicited from persons whose names were collected by fundraisers, typically stationed in airports. The names of travelers considered potential donors were forwarded to members of the team who then attempted to solicit loans or contributions.

Even though Billington was aware that principal and interest on the loans he solicited were not being repaid in a timely manner, if at all, he continued to solicit loans. He continued to do so even after federal and state investigations regarding his loan activities had commenced, and after his office was searched pursuant to federal and state search warrants for evidence of securities fraud.

The present case was one of three in which Billington was named a defendant for his activities while affiliated with the LaRouche organization. The first was in Boston. It began with a federal grand jury investigation in the fall of 1984, and culminated in a federal indictment on October 6, 1986, charging him with wire fraud and conspiracy to commit wire fraud. These charges were based on unauthorized credit card use and telephonic solicitation of loans by Billington and other fundraisers located in Boston. He was tried on these charges in December, 1987, but a mistrial was declared in May, 1988. In January, 1989, these charges were dismissed — two years after the Commonwealth's indictments.

The other case, a federal grand jury investigation in Alexandria, began with, or soon after, the execution of federal search warrants on October 6, 1986 (the same date as the Boston indict-

ment) at the Leesburg headquarters of the LaRouche organization. The Alexandria indictment was returned October 14, 1988, after the Commonwealth's indictment. However, the Alexandria case proceeded to trial first and resulted in the conviction of Billington on all counts. Billington was sentenced to three years imprisonment on January 27, 1989, approximately nine months before the trial in this case.

■ If the acts constituting the state offenses for which Billington was convicted were the "same" acts that were the subject of "a prosecution [or proceeding] under the federal statute," Code § 19.2-294 is "a bar to a prosecution [or proceeding] under the state statute."[1] This provision makes mandatory that which had previously been "within the discretion of the courts as a rule of comity." *Owens v. Commonwealth*, 129 Va. 757, 762, 105 S.E. 531, 532 (1921). Prior to its adoption, the general rule was that "where courts have concurrent jurisdiction, the court which first takes jurisdiction always has priority and the right to conclude the specific litigation." *Id.* at 761, 105 S.E. at 532. Therefore, the provision only applies when a federal "prosecution or proceeding" has commenced before the commencement of a state prosecution. *Id.*

Under this provision, a prosecution under state law for an offense arising out of a joint federal and state investigation is barred where a defendant has been charged in a federal warrant for the same acts. *Sigmon v. Commonwealth*, 200 Va. 258, 268, 105 S.E.2d 171, 179 (1958). However, the mere fact that charges may be the result of a joint federal and state investigation does not necessarily bar a state prosecution. *Shilling v. Commonwealth*, 4 Va. App. 500, 505, 359 S.E.2d 311, 313 (1987). Even if "some of the events of the State prosecutions" are recited in an affidavit for a federal search warrant, a later state prosecution is not barred

---

[1] When Billington was indicted in February, 1987, the bracketed language was contained in Code § 19.2-294; however, effective July 1, 1987, it was deleted and language was added to define the commencement of a prosecution as "the return of indictment by a grand jury or the filing of an information by a United States Attorney." Since we conclude that the acts constituting the offenses for which Billington was convicted in state court are not the same acts which were the subject of the federal grand jury proceedings in either Boston or Alexandria, we assume, without deciding, that the language of the statute as it existed prior to the amendment is applicable to this case. Thus, we must determine whether the "same" acts were the subject of a federal "prosecution or proceeding" and the subject of a later state prosecution. We also assume that a federal grand jury investigation may, under certain circumstances, constitute a "proceeding" within the meaning of this statute.

where the search warrant is "based on other information developed during the investigation." *Id.* at 506, 359 S.E.2d at 314.

■■■ The "bar to a prosecution or proceeding" contemplated by Code § 19.2-294 depends upon the "identity of the act." *Jones v. Commonwealth*, 218 Va. 757, 760, 240 S.E.2d 658, 661, *cert. denied*, 435 U.S. 909 (1978). Two crimes, even though similar because "committed by the same criminal agent during a continuing course of intimidation of the same victim" are not "the same act" if not simultaneously committed. *Id.* at 761, 240 S.E.2d at 661 (theft of money and theft of automobile during a robbery of a motel). Multiple thefts do not constitute the "same act" if they do not occur "at one and the same time." *Martin v. Commonwealth*, 221 Va. 720, 724, 273 S.E.2d 778, 781 (1981). Thefts from different victims, even though occurring during the same transaction, are "based upon distinct and separate acts" and do "not involve the same theft." *Id.* at 726, 273 S.E.2d at 782.

In order to determine if Billington's convictions are based on the "same acts" as those investigated for prosecution by the federal grand juries, we must compare the acts upon which these convictions were based with the acts underlying the violations investigated by the federal grand juries.

In Virginia, Billington was convicted of eight counts of securities fraud. Three of these convictions were based upon his obtaining money from Eugene R. Tate "by means of untrue statements, undue pressure, and/or failure to state a material fact" in selling a promissory note issued in the name of Caucus Distributors, Inc. Two of his convictions were for selling a promissory note in the name of Caucus Distributors, Inc. to Marie Finchum. A further conviction was based on the sale to Finchum of a promissory note issued in the name of Fusion Energy Foundation, Inc. The remaining two convictions were based on more general allegations: one charged him with selling "unregistered securities" in the name of Fusion Energy Foundation, Inc. and Caucus Distributors, Inc. "with intent to defraud the purchaser;" the other charged him with transacting business as an "unregistered broker-dealer . . . with intent to defraud the purchaser."

The Boston indictment named fifteen defendants including, in addition to Billington, nine individuals and five organizations, one of which was Caucus Distributors, Inc. The Boston indictment al-

leged a scheme to defraud by wire which involved the unauthorized use of credit card accounts, aiding and abetting in the fraud by wire, a conspiracy to prevent the grand jury from gathering evidence, and criminal contempt by a person other than Billington. Of the 115 specific counts describing the scheme to defraud certain individuals, none included allegations relating either to Eugene R. Tate or Marie Finchum. Moreover, Billington's participation was alleged to have occurred in Massachusetts. Although the organizational defendants were alleged to have operated in other states, the Boston indictment contained no allegation that they did so in Virginia. Certain activity of some of the other individual defendants was described as having occurred in Virginia, but no such participation was alleged with respect to Billington.

The Alexandria indictment charged seven individual defendants with one count of conspiracy to commit mail fraud, ten counts of mail fraud and one count of conspiracy to defraud the Internal Revenue Service. Of these, Billington was charged with the conspiracy to commit mail fraud and three counts of mail fraud. The counts with which he was charged related to a promissory note mailed to Dorothy Powers and letters of indebtedness mailed to Lita Witt and Mrs. Audrey Carter. None of these counts involved the promissory notes given to Eugene R. Tate or Marie Finchum. Moreover, the allegations reflecting Billington's involvement in the conspiracy to commit mail fraud dealt with his interaction with Dorothy Powers, Lita Witt and Audrey Carter, the victims in the three mail fraud counts and instructions he gave to a co-worker "on what to say to potential lenders." The remaining charge of conspiracy to defraud the Internal Revenue Service was made only against the defendant, Lyndon H. LaRouche, Jr., and did not relate to Billington.

The acts constituting the crimes for which Billington was charged in both the Alexandria and Boston indictments are different from the acts with which he was charged in the Virginia indictment. Each specific crime charged in the federal indictments identified different victims from those identified as victims in the Virginia indictment. There is no indication that the acts of wire fraud and mail fraud committed on the victims identified in the federal indictments had any relationship to the acts constituting the securities fraud involving the victims identified in the Virginia

indictment. Therefore, the charges in the federal indictments were based on "distinct and separate acts" and do not bar the Virginia convictions. *See id.*

Billington, however, points to other indications that the acts charged in the Virginia indictments were the subjects of the federal grand jury proceedings. He points to the similarity of the acts alleged in all three indictments, evidence introduced in the federal grand jury proceedings that may have included the acts charged in the Virginia offenses, and evidence relating to the federal grand jury proceedings that was introduced in the Virginia trial.

He argues that "[a]ll three indictments charged the fraudulent solicitation of loans by the same organizations through the use of nearly identical misrepresentations." Billington's argument is no more than recognition of a common modus operandi. Code § 19.2-294 bars a prosecution based on the "same act." It does not bar a prosecution simply because a common modus operandi is used to commit the crimes for which a defendant is charged.

█ Billington also argues that the federal grand juries "had access to and considered all of the documentary proof and testimony subsequently introduced in the Virginia case." He contends that the federal grand jury "received information about every loan solicitation by every fundraiser." To support this contention he asserts that "contact cards" describing potential lenders were maintained by fundraisers and that thousands of such cards from offices all over the country, including the office out of which Billington worked, were available to the federal grand jury. He contends that a federal search warrant executed at the office in which Billington worked resulted "in the seizure of approximately two million documents which were thereafter maintained in exclusive federal custody and control." The mere fact that evidence of a state crime may be captured in the broad sweep of an inquiry before a federal grand jury does not bar prosecution by the state for that crime. "[A] step in the process of prosecution, under [a] Federal statute" must first be begun against a defendant for the "same act" before Code § 19.2-294 is a bar to a later state prosecution. *Sigmon v. Commonwealth*, 200 Va. 258, 268, 105 S.E.2d 171, 179 (1958). The collection of evidence by a federal grand jury which coincidentally, inadvertently or unavoidably includes evidence of a state crime is not "a step in the prosecution, under federal statute," of that crime and does not bar prosecution by the

state for that crime.

■ Finally, Billington contends that various witnesses testified in the Virginia trial "about precisely the *same loan transactions* that had formed the basis of the Alexandria mail fraud counts." He argues that testimony "focused exclusively on the nationwide scheme and had little if anything to do with any of the loan transactions charged in the indictment." This evidence, he contends, was relied upon "to prove that Billington knew that loans were not being repaid and therefore that he was misrepresenting the facts to prospective lenders." Again, the language of Code § 19.2-294 does not stretch a barrier as broad as Billington seeks. The mere fact that the prosecution introduced and relied upon evidence of federal crimes to prove Billington's intent with respect to the different acts for which he was being prosecuted under state law does not bar his prosecution.

For these reasons, we conclude that the trial court did not err in finding that Code § 19.2-294 was not a bar to Billington's convictions. Therefore, the judgments of conviction are affirmed.

*Affirmed.*[2]

Bray, J., and Elder, J., concurred.

---

[2] Other issues raised by Billington in this appeal have no precedential value, or other significance for the law or legal system, and, therefore, are considered and disposed of in an unpublished memorandum opinion filed with the clerk of this court.