COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Clements
Argued at Salem, Virginia


MARK ANTHONY GRAVES
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 2938-05-3                    JUDGE LARRY G. ELDER
                                                 FEBRUARY 20, 2007
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                      Charles J. Strauss, Judge

        John Gregory, Jr., for appellant.

        Eugene Murphy, Senior Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Mark Anthony Graves (appellant) appeals from his bench trial convictions for two counts of

third-offense domestic assault and battery in violation of Code § 18.2-57.2(B).  On appeal, he

contends the court erroneously (1) excluded evidence of the victim's bias against him, (2) concluded

the evidence was sufficient to convict him in the absence of paternity testing or credible evidence

that an assault had occurred, and (3) exercised jurisdiction over the charged criminal offenses before

the completion of paternity testing ordered as part of a child support proceeding then underway in

the juvenile and domestic relations district court.  We hold the trial court committed no reversible

error, and we affirm the challenged convictions.

                             I.  EXCLUSION OF TESTIMONY

        "Bias is a term used in the 'common law of evidence' to describe the relationship between a

party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in favor of or against a party." United States v. Abel, 469 U.S. 45, 52 (1984). Evidence relating to a point, such as bias, properly at issue in the case is relevant and, therefore, admissible "if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993); see also Charles E. Friend, The Law of Evidence in Virginia § 11-1 (5th ed. 1999 & Supp. 2001). "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 833, 842 (1988). In order to preserve for appeal a ruling excluding evidence at trial, "the party must proffer or avouch the evidence for the record . . . ; otherwise, the appellate court has no basis to decide whether the [exclusion of the] evidence was [error]." Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992).

Here, appellant's counsel proffered his belief that "Ms. Lewis would answer that she has heard Ms. Leftwich swear at the [appellant] over the telephone at Ms. Lewis' house when Ms. Leftwich was at the home of Ms. Lewis and talking to the defendant, swearing at him over the telephone." Appellant's counsel elaborated, "[T]hat's the specific that I think I could get to." Because the proffered testimony would have established, at best, that Ms. Lewis heard Ms. Leftwich swear at appellant over the telephone for an unknown reason at an unknown time during the course of their five-year relationship, the record failed to establish that this proffered testimony was relevant or material to establish bias.

On this record, we hold the trial court did not abuse its discretion in excluding the proffered testimony.

## II. SUFFICIENCY OF THE EVIDENCE

Under familiar principles of appellate review, we must examine the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly

deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trier of fact], which has the unique opportunity to observe the demeanor of the witnesses as they testify."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993).

Code § 18.2-57.2 provides that "[a]ny person who commits an assault and battery against a family or household member is guilty of" a criminal offense as prescribed therein.  It incorporates by reference the definition of "family or household member" contained in Code § 16.1-228, which provides in relevant part as follows:

> "*Family or household member*" means . . . (v) any individual who has a child in common with the person, whether or not the person and that individual have been married or have resided together at any time, or (vi) any individual who cohabits or who, within the previous 12 months, cohabited with the person . . . .

### A.  Sufficiency of the Evidence to Prove Occurrence of Assaults

A battery is "an unlawful touching."  Adams v. Commonwealth, 33 Va. App. 463, 468, 534 S.E.2d 347, 350 (2000).  The touching need not result in injury to be a battery.  Id.  In the case of an intentional battery, "[a] battery always includes an assault."  Hinkle v. Commonwealth, 137 Va. 791, 794, 119 S.E. 53, 54 (1923).

Here, Wendy Leftwich testified that appellant assaulted and battered her on both February 1 and May 19, 2005.  She testified that, on February 1, appellant "got real, really, really angry, angry and grabbed me by my throat and pushed me from the living room all the way to the bedroom holding my throat and pushing me down on the bed and said that I hate you.  I should kill you . . . ."  Shortly thereafter, he "grabbed [her] again and pushed [her] towards the air conditioner and said that . . . if he had a hammer he would bash [her] F brains out."  As to the May 19, 2005 incident, she said that appellant "barged into [her] house and snatched [her] up out of [her] bed while she was asleep"

at 3:00 a.m. After taking food and various other items from her house, he asked Leftwich if she was "messing around with anybody." Although she told him no, "he had a[n] evil look . . . on his face and he said you know what? I ought to, girl, you don't know exactly what I want to do to you," and then he "punched [her] in the nose" "very hard." When Deputy Timothy Eanes responded to Leftwich's residence shortly before 5:00 a.m., he observed that Leftwich's nose was swollen and appeared to have been bleeding. The trial court specifically found Leftwich's testimony about the batteries credible.

The evidence, including Leftwich's testimony, viewed in the light most favorable to the Commonwealth, was sufficient to prove beyond a reasonable doubt that appellant assaulted and battered Leftwich on both February 1 and May 19, 2005.

B. Sufficiency of the Evidence to Prove Victim was Family or Household Member

Leftwich testified that, as of the date of trial on September 6, 2005, she had known appellant for five years and that during that time, they were boyfriend and girlfriend, living together on an "off and on basis." Leftwich testified that appellant was the biological father of her daughter, Makala Graves, who had been born on September 14, 2002. Appellant testified that in response to Leftwich's claim for child support filed prior to the institution of the criminal charges, he was challenging his paternity of Makala, but throughout his testimony at the criminal trial, he referred to Makala as "my daughter." Appellant admitted that since Makala's birth, he had called her his daughter and that he stayed at Leftwich's home sometimes because it was the only way he could see "his daughter." Appellant admitted that he had only recently challenged his paternity because Leftwich had filed for child support and he "want[ed] to make sure that . . . the child is mine." Appellant's mother also testified that Makala was appellant's daughter, stating, "That's his daughter, far as I know my grandchild."

The trial court found Leftwich was a "family or household member" as required to support appellant's conviction under Code § 18.2-57.2, stating, "There's no question that this falls under the definition of a family or household member through his daughter, a child in common even if I don't believe they were [living together]." The evidence viewed in the light most favorable to the Commonwealth, including Leftwich's statements and appellant's numerous prior acknowledgements of Makala as his daughter, was sufficient to prove beyond a reasonable doubt that Leftwich was a "family or household member" of appellant's, as defined in Code § 16.1-228 and incorporated in Code § 18.2-57.2, because they had "a child in common."

Appellant contends for the first time on appeal that the court could not find him guilty without evidence falling into any of the seven categories listed in Code § 20-49.4, which he labels "the statutorily preferred evidence" for proving paternity. We reject that contention.

Nothing in Code § 20-49.4 provides that parentage may be proved only with the listed categories of evidence. Rather, that statute provides that "[a]ll relevant evidence on the issue of paternity shall be admissible" and that "[s]uch evidence may include, *but shall not be limited to*, the" seven categories of evidence listed in the statute. Code § 20-49.4 (emphasis added). In addition, subsection (2) compels the court, "*upon request*" of a putative father, to require the parties to "submit to appropriate" "[m]edical or anthropological" "tests" to determine parentage. Code § 20-49.4(2) (emphasis added).

We need not decide whether this subsection applies in criminal matters because the record contains no indication that appellant made a request for such testing in the criminal proceedings. To the contrary, appellant's counsel mentioned in opening argument at trial on September 6, 2005, that appellant planned to challenge paternity in a hearing scheduled for October 14, 2005, in juvenile and domestic relations district court but that only "heaven knows when the DNA actual evidence of the child either being his or not his will be back." Appellant's counsel then stated in closing

argument, "We'll know more obviously when there's a DNA test but that's for . . . another court of another jurisdiction." Because appellant made no timely request for court-ordered DNA testing, he may not now raise these issues to challenge the sufficiency of the evidence to support his convictions in this criminal trial.[1]

### III. JURISDICTION TO CONVICT APPELLANT UNDER CODE § 18.2-57.2

Appellant contends the circuit court lacked jurisdiction to convict him for violating Code § 18.2-57.2(B) based on a finding that Wendy Leftwich was a household or family member as defined under that statute because they had a child in common. This is so, he claims, because at the time he was charged with violating that statute, Leftwich had already filed a petition for child support in the juvenile and domestic relations district court and he had already asserted a challenge to his paternity in that proceeding. Appellant argues that the district court was the first to acquire jurisdiction over the issue of paternity and that the circuit court lacked jurisdiction to adjudicate the issue of paternity while that question was still pending in the district court. Appellant concedes he did not raise this issue in the trial court but contends it renders his criminal convictions void and that, because the convictions are void, the ends of justice exception to Rule 5A:18 permits us to consider the question. We conclude the applicability of the ends of justice exception is inextricably linked to the merits of appellant's claim. Because we conclude the trial court had jurisdiction to address the issue, we hold the ends of justice exception does not apply.

---

[1] Appellant contends on brief that "The court received an exhibit that showed that the [juvenile and domestic relations district court (J&DR court)] had ordered a paternity test. That case was to be heard February 21, 2006 in the [J&DR court]." However, appellant cites no portion of the appendix or the record in support of his claim. Further, the trial transcript contains no reference to such an exhibit, and we are unable to find such an exhibit in the trial record for this matter. As discussed supra in Part II.B., the transcript reflects that appellant's counsel mentioned the district court proceedings in appellant's criminal trial on September 6, 2005 only briefly. Appellant does not allege and nothing in the record indicates that he asked the trial court to stay the criminal proceedings pending the results of the paternity test or the district court's determination of paternity.

"A void judgment is one that has been procured by extrinsic or collateral fraud or entered by a court that did not have jurisdiction over the subject matter or the parties." Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987) (citations omitted).

> An issue of subject matter jurisdiction, as distinguished from an issue of the exercise of subject matter jurisdiction, concerns the "'power of a court to adjudicate a specified class of cases.'" Nelson [v. Warden], 262 Va. [276,] 281, 552 S.E.2d [73,] 75 [(2001)] (quoting Moore [v. Commonwealth], 259 Va. [431,] 437, 527 S.E.2d [406,] 409 [(2000), overruled on other grounds by Nelson, 262 Va. at 285, 552 S.E.2d at 77]); see also Moore, 259 Va. at 437, 527 S.E.2d at 409 ("emphasizing the necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case").

Parker v. Commonwealth, 42 Va. App. 358, 374-75, 592 S.E.2d 358, 366 (2004).

Code § 17.1-513 clearly provided the circuit court with subject matter jurisdiction to adjudicate felony familial assaults after indictment. Appellant does not contend the circuit court lacked subject matter jurisdiction to adjudicate the question whether he was guilty of the charged criminal offenses. Instead, appellant contends that the circuit court lacked the authority to *exercise* that jurisdiction until the determination regarding parentage was made by the district court. If, as he argues, the circuit court did, in fact, lack authority to *exercise* its subject matter jurisdiction when it convicted him, appellant's convictions would be, at most, voidable rather than void. E.g. Robertson v. Commonwealth, 181 Va. 520, 536, 25 S.E.2d 352, 358 (1943). Thus, they would be subject to attack only on direct appeal, following either a timely objection in the trial court or application of Rule 5A:18's ends of justice exception.

We conclude, however, that a circuit court does not err in *exercising* subject matter jurisdiction to determine parentage for purposes of adjudicating a defendant's guilt on charges of felony domestic assault, whether or not other proceedings involving a determination of parentage are then pending in the juvenile and domestic relations district court. Appellant cites no statute or

case law prohibiting a circuit court from determining guilt of a domestic crime based on "a child in common" under these circumstances,[2] and we are aware of none.

Code § 20-49.2 specifically states as follows: "The circuit courts and the juvenile and domestic relations district courts shall have concurrent original jurisdiction of *cases arising under this chapter*. The determination of parentage, *when raised in any proceeding*, shall be governed by this chapter." (Emphases added). Thus, as to "*cases arising under this chapter*," a clear reference to civil proceedings to determine parentage instituted by petition pursuant to Code §§ 20-49.1 to -49.10, the circuit and juvenile courts have concurrent original jurisdiction. The general rule with regard to courts having concurrent jurisdiction is that "'the court which first takes jurisdiction always has priority and the right to conclude the specific litigation.'" Billington v. Commonwealth, 13 Va. App. 341, 344, 412 S.E.2d 461, 462-63 (1991) (quoting Owens v. Commonwealth, 129 Va. 757, 761, 105 S.E. 531, 532 (1921)). For purposes of determining priority, a court takes jurisdiction when the document instituting the proceeding in that court is filed or served. See 20 Am. Jur. 2d Courts § 88 (2d ed. 2006).

However, assuming the provisions of Code §§ 20-49.1 to -49.10 regarding determinations of parentage apply to the "child in common" finding made in these criminal proceedings, these proceedings do not constitute a "case[] arising under this chapter" for purposes of the concurrent jurisdiction provisions. Code § 20-49.2 contains no concurrent jurisdiction provision regarding jurisdiction for "proceeding[s]" in which a determination of parentage is involved other than those

---

[2] We note that the statutory scheme governing determinations of parentage provides a method for making the child at issue a party to the action and expressly states that a determination of parentage made "under the provisions of this chapter shall not be binding on any person who is not a party." Code § 20-49.2; see also Commonwealth ex rel. Gray v. Johnson, 7 Va. App. 614, 623-24, 376 S.E.2d 787, 792 (1989) (citing statute to hold prior adjudication of paternity obtained by mother had no *res judicata* effect as against child and reasoning that public policy to achieve best interests of child "would be thwarted if a child were bound by a paternity determination in which the child's independent rights and interests were not adequately protected").

"cases arising under this chapter." Thus, the rules governing priority in concurrent jurisdiction cases do not apply. Even if the statute did provide for concurrent jurisdiction in all proceedings involving a determination of parentage, not just those instituted by civil petition filed pursuant to Code § 20-49.2, the result would be the same here because "[t]he rule that priority controls the exercise of concurrent jurisdiction applies only when the cases involved are identical as to subject matter, parties, and relief sought." 20 Am. Jur. 2d, supra, § 89. Manifestly, this is not the case where one proceeding is criminal and the other is civil.

Because the court had both subject matter jurisdiction and the authority to exercise that jurisdiction over the issue of appellant's paternity of the victim's child in the instant criminal proceedings, appellant's convictions are neither void nor voidable and may not be challenged on this basis for the first time in this appeal. See also 20 Am. Jur. 2d, supra, § 90 (stating that "[a]n objection to a forum's exercise of jurisdiction on the basis of the priority principle may be waived").

IV.

For these reasons, we conclude the court did not erroneously exclude evidence of the victim's bias against appellant, exercise jurisdiction over the charged criminal offenses, or hold the evidence was sufficient to convict him. Thus, we affirm the challenged convictions.

Affirmed.