# Richmond

## Fred Bull, Jr., Alias, Etc. v. Commonwealth of Virginia.

January 15, 1968.

Record No. 6708.

Present, All the Justices.

*R. R. Ryder* for plaintiff in error.

*William P. Bagwell, Jr., Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

Snead, J., delivered the opinion of the court.

On January 9, 1967, the grand jury of the Hustings Court of the City of Richmond, Part II, returned an indictment against Fred Bull, Jr., defendant, charging him with robbery of Ernest M. Adams, manager of the Virginia Alcoholic Beverage Control Board's (ABC) store on Hull street in Richmond.

A trial was had on January 30, 1967. Defendant, who was represented by counsel of his own choosing, pleaded not guilty and a trial by jury was waived. At the conclusion of the Commonwealth's evidence, defendant moved to strike on the ground that the evidence was insufficient as a matter of law. The motion was overruled and

defendant rested his case without offering any evidence. The trial court found defendant guilty of robbery as charged in the indictment, deferred imposition of sentence, and ordered a presentence report.

After receipt of this report made by a probation and parole officer, the court on February 22, 1967, proceeded to sentence defendant. His punishment was fixed at confinement in the State penitentiary for a period of twenty years, but for reasons appearing proper to the court the last ten years of the sentence were suspended upon certain conditions. Defendant moved to set aside the judgment as being contrary to the law and evidence. The motion was overruled and defendant excepted to the court's action. Upon defendant's petition, we granted him a writ of error.

Defendant makes four assignments of error. However, the crucial and controlling issue presented is whether the evidence was, as a matter of law, insufficient to support a conviction.

" 'When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless "it appears from the evidence that such judgment is plainly wrong or without evidence to support it". * * *' " *Allison* v. *Commonwealth*, 207 Va. 810, 811, 153 S.E.2d 201, 202.

Four witnesses testified for the Commonwealth. The first witness called was Ernest M. Adams, manager of the ABC store on Hull street. He stated that he was "held up and robbed" on October 8, 1966; that he entered the store about 8:30 a.m. on that day because "I have work to do before opening for business" at 10 a.m. When Adams reached the "back office space" he observed that a linoleum cover had been removed from the safe, and upon further investigation he discovered that a hole had been cut in the ceiling of the building. Adams then realized that "somebody had been in the store." As he turned to leave and call the police "two men jumped up from behind the cases. One of them had a hatchet, * * * the other said he had a gun. * * * They demanded that I open the safe. I opened the safe for them. After I got the safe open, they made me lay down on the floor, they took the money and left." He testified that $6,806.20 was taken, which was the property of the Commonwealth in his custody.

In describing the assailant who held the hatchet and wore a stocking over his head, Adams stated: "Well, I would say he was not quite as large as I was. And to me, with the stocking over his head

he looked horrible, especially with the hatchet in his hand. I was scared to death." He further testified that it was his "honest opinion that they [robbers] were colored". On cross-examination Adams admitted that he "couldn't identify" the person who possessed the hatchet and wore the stocking.

Detective A. C. Lindsey of the Richmond Police Department participated in the investigation of the crime. He testified that he found a hole in the "slag" and tin roof of the ABC store that had been made "with some instrument—ax or hatchet or what have you * * *." He also discovered a sales slip for $2.98 issued by one of the Army and Navy Stores in Richmond dated October 7, the day before the robbery, among the debris around the hole on the roof.

Pursuant to a search warrant, Detective Lindsey and other officers made a search of defendant's home. The officers were met at the door by defendant's sister who showed them to defendant's room which was located on the second floor. According to Lindsey, they found some clothing and also "a medium size stocking, half length" with a knot tied in it lying on a chair. The stocking was introduced in evidence and it is the upper portion of a lady's brown nylon stocking about twelve inches long. The knot is tied at the lower end. After searching defendant's room, Lindsey, and another officer undertook to search the kitchen on the first floor. In a drawer to the sink they found, among other things, a hatchet. "It appeared to be new. It had been damaged some and it had tar on it." A label on the hatchet bore the trade name of "Collins Homestead." Lindsey stated that he did not know how many persons lived in the house. He saw two girls while there. One claimed to be defendant's sister and the other, who was not identified, entered during the search.

Edgar A. Meadow, a sales clerk for the Army and Navy Store located on Hull street near the ABC store, testified that the sales ticket found at the scene of the crime represented a sale made by him on October 7; that on that day he was approached by "two young Negro men" who wanted to purchase a hatchet; that he sold them a "Collins Homestead" hatchet, which was "the only one we had." He identified the hatchet found in defendant's room as "the same type" he sold the two men. Meadow stated that defendant "fit the description" of one of the men who purchased the hatchet from him. On cross-examination Meadow testified:

"Q. As I understand it, you cannot identify positively either of the persons to whom you sold the hatchet, is that correct?

"A. Yes, sir.

"Q. The hatchet that has been introduced here, you cannot identify that hatchet positively as being the one you sold to these two persons you are unable to identify, is that correct?

"A. Yes, sir.

"Q. As a matter of fact, the hatchet that has been introduced here has a brand name on it, but that hatchet is sold by other Army and Navy stores, and as far as you know by hardware stores and other types of stores in the Richmond area who carry that kind of hatchet, is that correct?

"A. As far as I know, sir.

"Q. The sales slip with the $2.98, or whatever it is that is written on it, you cannot state positively that that sales slip represents the sale of a hatchet, is that correct?

"A. Correct, sir.

"Q. The only thing you know about that sales slip is that it represents an item that was sold for $2.98, is that correct?

"A. Yes, sir.

"Q. It could have been any other article that you sold from the store other than the hatchet that cost $2.98, is that correct?

"A. Yes, sir."

The testimony of Detective Kenneth S. Marcuson was substantially the same as that of Detective Lindsey. In addition, he stated that defendant could not be found in the city of Richmond after a warrant had been issued for his arrest.

As has been seen all the evidence adduced against defendant was circumstantial. In *Webb* v. *Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29, we said:

"Where the Commonwealth, in a criminal case, undertakes to prove the guilt of the accused by circumstantial evidence, as it did in the present case, not only must it prove the circumstances, but it must overcome the presumption of innocence and establish his guilt beyond a reasonable doubt. All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

The inferences to be drawn from proved facts are within the province of the jury, or the court trying the case without a jury, so long as the inferences are reasonable and justified."

Tested by these principles, we hold, as a matter of law, that the Commonwealth's evidence falls short of being sufficient to sustain a finding that defendant was guilty of robbery as charged in the indictment.

Adams, the victim of the robbery, could not identify defendant as one of the robbers. It was not proven that defendant was at or near the scene of the crime or that the stocking found in defendant's room was the same or of a similar type worn by one of the robbers. Meadow, who sold a hatchet to two Negro men, testified defendant "fit the description" of one of them, but he could not "identify positively" the defendant. There was no proof that the hatchet found in the kitchen of the home where defendant resided with others was the same one used in the commission of the crime. Moreover, there was no showing that the sales ticket found on the roof of the ABC store was for the purchase of a hatchet.

For the reasons stated, the judgment appealed from is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*