## Staunton

THOMAS JAMES COMER v. COMMONWEALTH OF VIRGINIA.

September 4, 1970.

Record Nos. 7236 and 7237.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*H. R. Pollard, IV*, for plaintiff in error in Record Nos. 7236 and 7237.

*William M. Phillips, Assistant Attorney General (Robert Y. Button, Attorney General*, on brief), for defendant in error in Record Nos. 7236 and 7237.

HARMAN, J., delivered the opinion of the court.

This is an appeal from a judgment of the trial court, after a waiver of trial by jury, finding the defendant, Thomas James Comer, guilty of robbery under Code § 18.1-91 and of "unauthorized use" of an automobile under Code § 18.1-164. He was sentenced to ten years in the state penitentiary on the robbery conviction with two years of this sentence suspended. Imposition of sentence was suspended under Code § 53-272 on the "unauthorized use" conviction upon condition that the defendant be of good behavior for a period of ten years.

The questions before us are whether the evidence was sufficient to sustain these convictions and whether defendant can be indicted and convicted of both robbery and unauthorized use.

On January 19, 1968, at approximately 7:00 p.m., James F. Talbot, Sr., a driver for Veterans Cab Association, picked up two male passengers on the corner of 25th and Marshall Streets in the City of Richmond. Upon arriving at their destination, which was in the 300 block of St. John Street, an object which Talbot thought was a pistol was placed at the back of his head and he was informed that "it was a stickup." Talbot handed the passengers his wallet and $12.00 which he was holding in his hand. The total sum taken was approximately $80.00.

Talbot was then ordered to "get out of the cab, walk down to the corner, which was about a third of the block away, turn the corner and not look back . . ." After Talbot turned the corner the cab was driven off.

Talbot's testimony was that he never saw the faces of the two men who robbed him well enough to identify them but that he noticed that one of them wore a brown suede jacket. Prior to seeing the money which was seized at the time defendant was arrested, Talbot had informed the police that one of the one dollar bills which had been taken from him had a hole through Washington's face.

At approximately 7:25 p.m., and before a report was made of the robbery of Talbot, Detectives Coleman and Stokes of the Richmond Police were on patrol in their car traveling west on Hospital Street. They observed two men running "fast" in an easterly direction along Hospital Street. Because of this unusual conduct, the detectives turned their vehicle and followed the two men in an attempt to stop and question them. The men eluded them by running into a wooded area in the vicinity of 17th Street. Other officers were called and a search was made of the wooded area. The suspects were not located and most of the officers returned to their normal activities.

At approximately 8:00 p.m. Officer Jenkins of the Richmond Police, who had been called in to aid in the search, observed the defendant emerge from the wooded area and proceed along 17th Street. Officer Jenkins pulled up behind the defendant in his police vehicle and asked him to get in. The officer testified that as the defendant climbed into the vehicle, he saw him drop something on the sidewalk.

Detective Coleman, summonded to the scene, positively identified the defendant as one of the men whom he had seen on Hospital Street and had chased into the wooded area. Detective Coleman testified that he had looked directly at the defendant's face when he first observed the two men and was able to positively identify the defendant. The description of the clothing worn by one of the men, which Detective Coleman had earlier given to the other officers, was identical to the clothing worn by the defendant at the time he was arrested. One of the items of clothing worn by the defendant was a brown suede jacket.

Before moving the police vehicle, Officer Jenkins made an inspection of the sidewalk where he had observed the defendant drop something. Approximately $35.00 in currency was found on the sidewalk and in the adjacent gutter. This currency included a one dollar bill with a hole through Washington's face. A search of defendant's person revealed an additional $31.00 in his pocket.

Detective Coleman testified that when he first observed the defendant, only minutes after he was picked up by Officer Jenkins, he noticed that the defendant was breathing hard and was perspiring, although it was a cold night. Mud on defendant's shoes was similar to mud in the wooded area where Coleman had last seen the suspects.

Talbot's cab was recovered at the corner of 5th and Hospital Streets, approximately 30 feet west from the point where Coleman and Stokes first observed the two men.

While the defendant denied committing the crime, and offered an alibi, he produced no evidence to corroborate this alibi.

■ It is well settled in Virginia that "When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it'." *Crisman* v. *Commonwealth*, 197 Va. 17, 18, 87 S.E.2d 796, 797 (1955); *Jones and Hall* v. *Commonwealth*, 210 Va. 299, 302, 170 S.E.2d 779, 782 (1969); *Corbett* v. *Commonwealth*, 210 Va. 304, 306, 171 S.E.2d 251, 252 (1969); *Cameron* v. *Commonwealth*, 211 Va. 108, 110, 175 S.E.2d 275, 276 (1970).

■ Where the Commonwealth relies upon circumstantial evidence to establish guilt, the chain of circumstances must be unbroken and the evidence, as a whole, must be sufficient to satisfy the guarded judgment that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty. The inferences to be drawn from proven facts are within the province of the jury, or the court trying the case without a jury, so long as the inferences are reasonable and justified. *Webb* v. *Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963); *Bull* v. *Commonwealth*, 208 Va. 447, 451, 158 S.E.2d 669, 672 (1968).

Viewing the evidence in the present case in the light most favorable to the Commonwealth and drawing the reasonable inferences therefrom, we hold that the evidence is sufficient, as a matter of law, to sustain the judgments rendered below.

■ We now consider whether on the facts before us defendant can be indicted and convicted of both robbery and unauthorized use.

Defendant contends that his conviction of both robbery and unauthorized use is a violation of his constitutional right not to "be put twice in jeopardy for the same offense." Constitution of Virginia, § 8. Two arguments are made in support of this contention.

Defendant first argues that the taking of the money and the taking of the cab was but one continuous offense. Therefore, to convict him of the robbery of the money as well as the unauthorized use of the cab was to put him twice in jeopardy for the same offense. This argument is without merit.

In the recent case of *Jones* v. *Commonwealth*, 208 Va. 370, 157 S.E.2d 907 (1967), the defendant contended that the alleged breaking and entering of a dwelling house in the nighttime with the intent to commit robbery and the attempted robbery was but "one continuous act" and constituted a single offense for which only one penalty could be imposed. There we said that "It is well settled that two or more distinct and separate offenses may grow out of a single incident or occurrence, warranting the prosecution and punishment of an offender for each." *Jones* v. *Commonwealth, supra,* 208 Va. at 375, 157 S.E.2d at 910. See also *Ashby* v. *Commonwealth*, 208 Va. 443, 158 S.E.2d 657 (1968).

Robbery is larceny from the person, or in his presence, by violence or intimidation. *Pettus* v. *Peyton*, 207 Va. 906, 910, 153 S.E.2d 278, 280 (1967); *Butts* v. *Commonwealth*, 145 Va. 800, 811, 133 S.E. 764, 767 (1926).

Code § 18.1-164, making the unauthorized use of an automobile a crime, provides in part: "Any person who shall take, drive or use any . . . vehicle . . . not his own, without the consent of the owner thereof and in the absence of the owner, and with intent temporarily to deprive the owner thereof of his possession thereof, without intent to steal the same, shall be confined in the penitentiary . . . ."

"The main difference between common law larceny and the statutory offense of unauthorized use is that in the former there must be an intent to deprive the owner of his property *permanently*, while in the latter the intent is to deprive the owner of possession of his automobile *temporarily* and without any intent to steal the same. The intent with which property is taken determines the offense." *Slater* v. *Commonwealth*, 179 Va. 264, 267, 18 S.E.2d 909, 910 (1942). See also *Travelers Indemnity Company* v. *Ford*, 208 Va. 151, 156 S.E.2d 606 (1967).

We hold that the taking of the money and the taking of the cab, under the circumstances shown by the evidence in this case, constituted two distinct offenses, i.e., a robbery of money and an "unauthorized use" of an automobile.

Defendant next argues that even if it be conceded that two distinct offenses were committed, and we have held there were two, double jeopardy still applies since unauthorized use is a lesser included offense under an indictment for robbery. This argument is answered by our earlier discussion.

It is the identity of the offense, and not of the act, which is referred to in the constitutional guarantee against putting a person twice in jeopardy, *Lawrence* v. *Commonwealth*, 181 Va. 582, 26 S.E.2d 54 (1943), and the double jeopardy clause of the constitution will act as a bar to prosecution only if the offenses are identical or if one offense is necessarily included in the other offense. *Ashby* v. *Commonwealth, supra.*

For these reasons the judgments are affirmed.

*Affirmed.*