### Richmond

THOMAS JAMES EPPS, JR. v. COMMONWEALTH OF VIRGINIA.

June 13, 1975.

Record No. 740949.

Present, All the Justices.

*Albert F. Fary, Jr.,* for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

The defendant, Thomas James Epps, Jr., was found guilty by a jury, and sentenced to ten years imprisonment by the trial court, as a principal in the second degree, upon an indictment under Code § 18.1-16 charging that he "feloniously attempt[ed] to kill and murder George A. Cipra." We granted a writ of error which presents issues involving double jeopardy, sufficiency of the evidence, misdirection of the jury, and validity of the verdict. We affirm.

On December 29, 1972, about 9:10 a.m., the First Virginia Bank of Nansemond, the deposits of which were insured by the Federal Deposit Insurance Corporation, was robbed of about $34,000 by four men, whose faces were partly covered. At the time, Allen Watson, the bank's president, was standing near the bank's main lobby talking with George A. Cipra, an off-duty detective of the Nansemond Police Department employed by the bank as a security officer, and who was dressed in "plain clothes." As Watson observed the armed men enter the bank, he made an exclamation and jumped into a nearby office.

Cipra, reacting to Watson's comment, turned toward the main lobby and observed three of the men, one being the defendant, in a crouched "duck-walk" position moving at a fast pace along the tellers' cages. Two of the men then jumped onto the tellers' counter and

Cipra reached to his belt for his .38 caliber pistol. At the same time, Cipra observed the fourth man, pointing a "long barrel blue steel revolver" directly at him, appear from around a "blind corner" in the bank, ten to twelve feet away. Cipra then dove to the floor of another nearby office, heard a shot while he was in midair, and drew his revolver as he crawled behind a desk. He was not struck by the bullet, which lodged in a wall three feet above the floor and near the point of his dive.

The defendant then joined the gunman at the door of the office where Cipra was hiding. Cipra was told "[c]ome out, I am going to kill you" and "[c]ome out or I will kill you." Concerned for the safety of other bank employees, Cipra secreted his gun in a drawer of the desk and emerged from the office where he was searched by the defendant and the gunman. He was then ordered into the bank vault with the officers and other bank personnel. Once in the vault, Cipra tried to observe closely the gunman, who then stated that if Cipra looked "at him one more time, he was going to blow [his] head off." In the vault, Cipra was "face to face," at a distance of two to three feet, with the defendant, who was having difficulty keeping his face covered with a turtleneck sweater. He observed that the defendant was carrying a "small caliber steel stubb-nose [sic] revolver." At the trial, Cipra identified the defendant as one of the robbers.

During his testimony, the defendant denied participation in the crime, claiming he was in Norfolk with a "girlfriend."

### Double Jeopardy.

The arrest warrant was executed within three weeks of the crime. The defendant was indicted during the trial court's July, 1973 term, tried in November, 1973, and sentenced in April, 1974.

On March 27, 1973, the defendant was tried in the United States District Court for the Eastern District of Virginia under a two-count indictment for violation of the Federal Bank Robbery Act.[1] The first count read, in part, that the defendant "by force and

---

[1] 18 U.S.C. § 2113 provides, in pertinent part, as follows:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank . . .

\* \* \*

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

violence and by intimidation, did take approximately $34,000.00 in money belonging to . . . the First Virginia Bank of Nansemond, . . . and [the defendant], in committing the aforesaid offense, did put in jeopardy the life of George Cipra and others . . . by means and use of a dangerous weapon, that is, a pistol. (18 U.S.C. 2113(d))." Epps was acquitted of the foregoing charges but was convicted of possession of stolen money, 18 U.S.C. § 2113(c), as alleged in the second count of the indictment. Cipra did not testify in that case.

The defendant contends that his acquittal of the federal robbery charge bars his subsequent state prosecution for attempted murder, under the principles of double jeopardy. He argues that the assault on Cipra was a necessary element of both the federal charge asserted in the first count of the indictment and the state charge of attempted murder, and, therefore, acquittal of the federal charge prohibited the state from trying him again for the same assault. We disagree with the defendant's contention. He has misconstrued the concept of double jeopardy.

█ "The double jeopardy clauses of the United States and Virginia Constitutions, as related to the present case, bar prosecution of a criminal charge against an accused already convicted of an identical or lesser included offense." *Rouzie and Boudreau v. Commonwealth*, 215 Va. 174, 176, 207 S.E.2d 854, 856 (1974). Offenses are identical if the facts required to convict of one would necessarily convict of the other. *Id.* But two or more distinct and separate offenses may grow out of a single incident, warranting the prosecution and punishment of an accused for each. *Comer v. Commonwealth*, 211 Va. 246, 250, 176 S.E.2d 432, 435 (1970). It is the identity of the offense, and not the act, which is referred to in the constitutional guaranty

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, . . . shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, . . . shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank, . . . in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker.

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

against double jeopardy. *Miles* v. *Commonwealth*, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964).

One of the tests applied to determine whether two offenses are identical is whether each offense requires proof of an additional fact which the other does not, even though some of the same acts may be necessary to prove both. If proof of an additional fact is required, an acquittal or conviction of either offense does not exempt the defendant from prosecution and punishment under the other. *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932); *Ebeling* v. *Morgan*, 237 U.S. 625 (1915); *Arrington* v. *Commonwealth*, 87 Va. 96, 100, 12 S.E. 224, 225, 10 L.R.A. 242 (1890); 1 *Wharton's Criminal Law and Procedure* § 144 (R. Anderson 1957). *Accord, Gore* v. *United States,* 357 U.S. 386 (1958).

The elements of the crimes involved here must be compared. Subsections (a) and (b) of the Federal Bank Robbery Act, on one hand, and subsection (d) on the other, note 1 *supra,* define one offense committed in two ways, that is, robbery of an insured bank, under the aggravated circumstances of jeopardizing the life of "any person" in the course of the robbery. Annot., 59 A.L.R.2d 946, 965. One of the necessary elements of this offense is the taking of money from an insured bank.

The elements of attempted murder in Virginia are, first, an intent to kill and, second, the doing of some direct act toward the consummation of the killing, but falling short of the accomplishment of the ultimate design. *Hargrave* v. *Commonwealth,* 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). *See Johnson* v. *Commonwealth,* 209 Va. 291, 293, 163 S.E.2d 570, 573 (1968).

Therefore, the offense of attempted murder requires proof of an intent to kill, a fact not necessary to sustain the charge of aggravated federal bank robbery; and, aggravated federal bank robbery requires proof of robbery of an insured bank, facts not required for proof of attempted murder.

Applying the foregoing test to the facts of this case, it is apparent that the state offense requires proof of an additional fact not necessary for conviction of the federal offense. Accordingly, the constitutional prohibition against double jeopardy does not bar this prosecution for attempted murder, even if, as the defendant argues, the same assault is an element in the robbery[2] and attempted murder charges.

---

[2] We will assume, as the defendant argues, that "assault" and putting "in jeopardy the life of" a person, within the context of 18 U.S.C. § 2113(d), note 1 *supra,* are

That this is so is demonstrated by application of the foregoing test set forth in *Blockburger* and *Arrington*, which emanated from *Morey v. Commonwealth*, 108 Mass. 433 (1871). In *Morey*, which involved an analogous set of facts, it was held that a conviction upon an indictment for lewd and lascivious cohabitation did not bar a conviction of the same defendant of adultery, even though proof of the same acts of unlawful intercourse were presented at both trials. The basis of the decision was that although a single act may be an offense against two statutes, if each statute requires proof of an additional fact, which the other does not, an acquittal or conviction under either is no bar to conviction under the other. 108 Mass. at 434.

■ The defendant is also incorrect in his contention that his conviction of possession of stolen money, 18 U.S.C. § 2113 (c), note 1 *supra*, "is a lesser included offense of robbery and in itself would be a bar to the subsequent prosecution of any greater offense [which has assault as an ingredient]." Subsection (c) makes it a separate substantive offense, not a lesser included offense, knowingly to receive or possess property stolen from a bank in violation of the Federal Bank Robbery Act. *Heflin* v. *United States*, 358 U.S. 415, 419 (1959). *See* Annot., 12 A.L.R. Fed. 664, 681-86.

■ We also reject the defendant's argument that Code § 19.1-259 bars this prosecution for attempted murder. That statute provides, in part, that "if the same act be a violation of both a State and a federal statute a prosecution . . . under the federal statute shall be a bar to a prosecution . . . under the State statute." This is not exactly a defense of former jeopardy, yet it amounts to such a defense in purpose and desired effect. *Sigmon* v. *Commonwealth*, 200 Va. 258, 263, 105 S.E.2d 171, 175-76 (1958). As we have demonstrated, *supra*, the defendant has not committed the "same act" within the meaning of the statute. On the contrary, he has committed separate and distinct acts, although arising out of the same incident. *Jones* v. *Commonwealth*, 208 Va. 370, 377, 157 S.E.2d 907, 911-12 (1967). *See Estes* v. *Commonwealth*, 212 Va. 23, 181 S.E.2d 622 (1971).

### Sufficiency of the Evidence.

The defendant contends that the Commonwealth failed to prove beyond a reasonable doubt all the necessary elements of attempted

synonymous, or that the latter includes the former. The federal courts apparently have not so decided. *See, e.g., United States* v. *Coulter*, 474 F.2d 1004, 1005 (9th Cir.), *cert. denied,* 414 U.S. 833 (1973).

murder. He argues: "There was no proof of any specific intent [by the gunman] to kill, there was no introduction of a deadly weapon, nor any proof that a projectile caused a hole in the wall alleged to have been caused by the persons robbing the bank. There was no proof that the gun used was a real gun capable of killing [Cipra] and not a blank gun or that it fired any projectile that caused the hole in the wall." The only contention which warrants any discussion here is whether there has been proof of a specific intent.

█ As we have said, in order to prove the crime of attempted murder, the evidence must show a specific intent to kill the victim which is coupled with some overt but ineffectual act in furtherance of this purpose. *Hargrave v. Commonwealth, supra,* 214 Va. at 437, 201 S.E.2d at 598.

The necessary intent is the intent in fact, as distinguished from an intent in law. *Id.; Merritt v. Commonwealth,* 164 Va. 653, 662, 180 S.E. 395, 399 (1935). Intent in fact is the purpose formed in a person's mind which may be shown by his conduct. *Chittum v. Commonwealth,* 211 Va. 12, 16, 174 S.E.2d 779, 781 (1970).

In the present case, robbery of a bank by the defendant and three other men, was in progress. All were armed. Cipra prepared to draw his .38 caliber pistol when confronted by one of the three, who was pointing a deadly weapon directly at him. As Cipra dived for cover, a shot was fired striking a wall three feet above the floor near the point where he had been. Thereafter, the gunman, with the armed defendant standing beside him, threatened to kill Cipra. These facts and circumstances were sufficient for the jury to find that the gunman had the requisite intent to murder Cipra, and that the defendant shared such intent. The defendant was equally bound by and answerable for the acts of the gunman because there was concert of action among the four robbers, with the resulting crime here under consideration one of the incidental probable consequences. *Westry v. Commonwealth,* 206 Va. 508, 514, 144 S.E.2d 427, 431 (1965).

### *The Instructions and The Verdict.*

The defendant argues that the trial court misdirected the jury because several of the instructions were either not supported by the evidence or were contrary to law. We have addressed these claimed errors in the preceding section of this opinion, and no additional comment is necessary.

■ The verdict read: "We, the jury, find the accused guilty of *aiding and abetting, #7* as charged in the indictment, and fix his punishment at *10 years.*" [3] We do not agree with the defendant's contention that the verdict is "defective" because it cannot be determined "whether or not the defendant was found guilty of attempted first degree murder [Code § 18.1-16] or attempted second degree murder [Code § 18.1-17] because the punishment could fit either."

Under the instructions, there were only two possible verdicts— not guilty or guilty of attempted murder in the first degree. Instruction number 7 permitted the jury to find the defendant guilty as a principal in the second degree, an aider and abettor. The indictment charged the defendant with attempted murder. It is, therefore, obvious that the jury found the defendant guilty of aiding and abetting the attempted murder in the first degree of Cipra, the only possible verdict except one of acquittal. The meaning of the verdict is certain, therefore it is sufficient and valid.

For these reasons, the judgment of conviction in this case is

*Affirmed.*

---

[3] The italicized portion was handwritten on a verdict form, which was signed by the foreman.