COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Beales and Powell
Argued at Richmond, Virginia


MICHAEL RASHE DAVIS
                                                                    OPINION BY
v.      Record No. 2581-09-2                          JUDGE ROBERT P. FRANK
                                                                    JANUARY 11, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LUNENBURG COUNTY
Leslie M. Osborn, Judge[1]

Rocco P. T. Columbus (Mokris & Dunning, P.L.C., on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Michael R. Davis, appellant, was convicted in a jury trial of vehicular aggravated

involuntary manslaughter, in violation of Code § 18.2-36.1(B).  Appellant contends the trial

court erred in failing to dismiss the manslaughter indictment because that conviction violates

both the Double Jeopardy Clause of the United States Constitution and § 19.2-294 of the Code of

Virginia.  He also contends the evidence was not sufficient to prove causation and criminal

negligence.  Finding no error, we affirm the trial court.

BACKGROUND

Under well established principles of appellate review, we view the evidence and all

reasonable inferences deducible from that evidence in the light most favorable to the

---

[1] The Honorable Robert G. O'Hara, Jr. heard appellant's motion to dismiss, which is a
subject of this appeal, on July 21, 2009.

-1-

Commonwealth, the party prevailing below.  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003).  So viewed, on the evening of January 6, 2009, appellant attended a birthday party along with his cousins, Lawanda Rainey and Ronald White.  Both White and appellant drank alcohol at the party.  White left the party on foot before appellant, and Rainey left in appellant's car.

As Davis drove on an unlit stretch of Mecklenburg Avenue, he was sending text messages on his cellular phone.  Appellant testified his headlights illuminated the road.  Rainey saw something in the road and yelled to appellant to "watch out."  Seconds later, appellant hit White, who was lying in the road.  Rainey never indicated appellant took any evasive action prior to striking White.  Appellant lost control of his car and crashed into a ditch.

Officers arrived at the scene.  White was declared dead at the scene.  Virginia State Trooper Joseph Landry observed that there were no skid marks leading to the decedent's body.[2] He also observed damage to the front undercarriage of appellant's car.  Landry detected a slight odor of alcohol on appellant.  Landry testified appellant appeared to be under the influence of alcohol.  Landry put appellant into the police car and advised him of his Miranda[3] rights. Appellant stated:

> I'm going to be honest with you.  Me and my cousin was coming
> down the road.  I was sitting there texting on my phone and I did
> not realize he was laying in the road.  And I ran over top of him.
> And after I ran over top of him, that's when I realized I had ran
> over top of something.  And that's when I swerved and hit the bank
> and everything.

---

[2] The trooper seemed to suggest that the road's wet surface might explain the absence of skid marks.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Appellant admitted to drinking alcohol, so Landry administered field sobriety tests. Appellant did not perform satisfactorily. At the sheriff's office, a breath test revealed appellant's blood alcohol level to be .15.

On April 8, 2009, appellant was convicted in general district court of driving under the influence, in violation of Code § 18.2-266. Immediately after his conviction, appellant was served with an indictment, returned by the grand jury on April 6, 2009, charging him with aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B).

Appellant filed a motion to dismiss the indictment on July 8, 2009. On July 21, 2009, the trial court conducted a hearing on appellant's motion. The trial court found no double jeopardy violation under Blockburger v. United States, 284 U.S. 299 (1932), and no violation of Code § 19.2-294.

A jury heard the aggravated involuntary manslaughter case on August 11, 2009. Melissa Kennedy, a forensic scientist who is a supervisor in the Breath Alcohol Department of Forensic Science, testified as an expert in toxicology. She stated that concentration and divided attention problems begin when the blood alcohol level reaches .05.[4] Kennedy explained that divided attention is the most important part of safe driving. At a .05 blood alcohol level, one begins to lose judgment and the ability to think coherently. She also testified that visual difficulties begin at a blood alcohol level of about .10. Alcohol consumption impairs reaction time such that an impaired driver takes longer to recognize an emergency and to take evasive action. Kennedy stated that while appellant's blood alcohol level was .15 at the time it was tested, it would have been .19 to .21 at the time of the accident.

---

[4] According to Kennedy, "divided attention" is the driver's ability to balance a number of skills required for safe driving, i.e., controlling the steering wheel, watching his speed, paying attention to the road and oncoming traffic, etc.

At trial, appellant testified that when Rainey told him something was in the road, he "immediately" put his phone down and swerved to avoid the object. Appellant denied not looking at the road. He explained, "I was looking down and looking up at the same time. I wasn't on my cell phone the whole entire time." When asked if he could have seen the object in the road sooner had he had not been texting, but looking forward, appellant replied in the negative, because it was dark. He further admitted that after seeing the object in the road, he had time to swerve around it. At trial, appellant denied hitting White.

The jury convicted appellant of aggravated involuntary manslaughter.

This appeal followed.

## ANALYSIS

Appellant contends the trial court erred in failing to dismiss the aggravated involuntary manslaughter indictment because that conviction violates both the Double Jeopardy Clause of the United States Constitution and § 19.2-294 of the Code of Virginia. Specifically, he argues he was improperly convicted and punished twice for committing one offense. He also argues the Commonwealth did not prove that White's death was caused by appellant driving under the influence of alcohol, nor did the Commonwealth prove the requisite criminal negligence.

### Double Jeopardy

### Standard of Review

In reviewing a double jeopardy claim, or a claim based on statutory interpretation, this Court shall conduct a *de novo* review. See Dalo v. Commonwealth, 37 Va. App. 156, 164-65, 554 S.E.2d 705, 709 (2001).

Our inquiry is whether the convictions and punishments for driving while intoxicated and aggravated involuntary manslaughter, both of which arose from the same incident, violate the

- 4 -

double jeopardy provision of the Fifth Amendment of the United States Constitution. In pertinent part, this amendment states that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

"This constitutional provision guarantees protection against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Payne v. Commonwealth, 257 Va. 216, 227, 509 S.E.2d 293, 300 (1999).[5]

To determine whether two charges constitute the same offense, we must consider the rule enunciated in Blockburger, 284 U.S. at 304.[6] "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. A double jeopardy violation exists only if the offenses always require proof of the same elements. See Illinois v. Vitale, 447 U.S. 410, 419-20 (1980). "In applying the Blockburger test, we look at the offenses charged in the abstract, without referring to the particular facts of the case under review." Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001).

---

[5] While the Attorney General seems to argue on brief that these were not successive proceedings, but "concurrent" prosecutions, no authority is cited to suggest a third category other than simultaneous or successive. At oral argument, the Attorney General conceded that prosecutions are either simultaneous or successive. Appellant's conviction for driving under the influence and prosecution for aggravated involuntary manslaughter were not joined in a single evidentiary hearing in the general district court. For the purposes of this appeal, therefore, we assume without deciding that these were successive prosecutions.

[6] While Dalo, 37 Va. App. 156, 554 S.E.2d 705, holds that the legislature intended to authorize multiple punishments under Code §§ 18.2-266 and 18.2-36.1 in simultaneous prosecutions, we need not address whether that same legislative intent applies to successive prosecutions. "A Blockburger analysis is preferred by courts generally as it maximizes judicial economy, providing an answer without resorting to a more detailed examination of legislative

An analysis of whether the multiple convictions and punishments imposed upon appellant are proper requires a determination of legislative intent. Thus, we must first examine the statutes under which appellant was convicted.

Code § 18.2-266 (driving while intoxicated) provides, in relevant part:

> It shall be unlawful for any person to drive or operate any motor vehicle . . . (i) while such person has a blood alcohol concentration of 0.08 percent or more . . . (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle . . . (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle . . . .

Code § 18.2-36.1 (aggravated involuntary manslaughter) provides, in relevant part:

> A. Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than 20 years, one year of which shall be a mandatory minimum term of imprisonment.

The driving while intoxicated and involuntary manslaughter statutes contain different elements. An element of driving while intoxicated is having a blood alcohol concentration of 0.08 or more. Code § 18.2-266(i) requires no evidence of erratic driving, performance on sobriety tests, or any other evidence that the defendant is "intoxicated." See Code § 4.1-100 (defining "intoxicated" as "a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or

intent." Id. at 164, 554 S.E.2d at 709.

- 6 -

behavior").  Blood alcohol concentration is not an element of involuntary manslaughter.  While aggravated involuntary manslaughter requires proof of driving under the influence, it also requires criminal negligence and death.  Code § 18.2-266 does not require these elements.  Viewed in the abstract, conviction under these two statutes passes the Blockburger test.

Because we find that each statute requires proof of additional facts not found in the other, therefore constituting two distinct offenses, there is no constitutional double jeopardy violation.[7]

## Code § 19.2-294

### Standard of Review

Appellant also contends the trial court erred in denying his motion to dismiss because he was twice tried and convicted for the same act. He argues his convictions violate the statutory bar against double prosecution.

As previously noted, in considering a claim based on statutory interpretation, this Court conducts a *de novo* review. See Dalo, 37 Va. App. at 164-65, 554 S.E.2d at 709.

Code § 19.2-294 states, in relevant part:

> If the same act be a violation of two or more statutes, or of two or more ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others.[8]

"Although the language of [this statute] does not state that it provides a defense of former jeopardy, 'it amounts to such a defense in purpose and desired effect.'" Londono v. Commonwealth, 40 Va. App. 377, 393, 579 S.E.2d 641, 648 (2003) (quoting Epps v.

---

[7] In a prosecution for a violation of Code § 18.2-36.1 or Code § 18.2-266(ii), (iii), or (iv), Code § 18.2-269 creates a rebuttable presumption that the accused was under the influence when the accused has a blood alcohol concentration of 0.08 or higher. However, the applicability of the statute to the issue before us was never raised below or briefed by the parties. A judge of this panel inquired whether Code § 18.2-269, in a Blockburger, 284 U.S. at 304, context, established that the blood alcohol concentration presumption was an element common to Code §§ 18.2-266 and 18.2-36.1. The Attorney General responded that under Code § 18.2-266(i), the blood alcohol concentration is an element of the offense, while Code § 18.2-269 only creates a method of proving intoxication. It is not an element of Code § 18.2-36.1. We agree with the Commonwealth.

[8] Code § 19.2-294 is inapplicable to simultaneous prosecutions. See Johnson v. Commonwealth, 38 Va. App. 137, 145 n.2, 562 S.E.2d 341, 345 n.2 (2002). As we have previously stated, we assume without deciding that these were successive prosecutions.

Commonwealth, 216 Va. 150, 155, 216 S.E.2d 64, 68 (1975)).  This statute "speaks to 'acts' of the accused, not elements of the offense."  Wade v. Commonwealth, 9 Va. App. 359, 365, 388 S.E.2d 277, 280 (1990).  So "'if two offenses involve "two separate and distinct acts," conviction of one does not bar a prosecution for the other.'"  Johnson v. Commonwealth, 38 Va. App. 137, 145, 562 S.E.2d 341, 345 (2002) (quoting Lash v. County of Henrico, 14 Va. App. 926, 930, 421 S.E.2d 851, 853 (1992) (en banc)).

> The test of whether there are separate acts sustaining several offenses is whether the same evidence is required to sustain them. In applying the "same evidence" test, the particular criminal transaction must be examined to determine whether the acts are the same in terms of time, situs, victim, and the nature of the act itself.

Johnson, 38 Va. App. at 146, 562 S.E.2d at 345 (internal citations and quotation marks omitted).[9]  Thus we must compare the acts upon which the manslaughter conviction was based with the acts underlying the conviction for driving under the influence.

If the two convictions cannot be sustained by the same evidence, "'then the fact that several charges relate to and grow out of one transaction or occurrence does not make a single act or offense where two separate acts or offenses are defined by statute.'"  Londono, 40 Va. App. at 394, 579 S.E.2d at 649 (quoting Hundley v. Commonwealth, 193 Va. 449, 451, 69 S.E.2d 336, 337 (1952)).

In Londono, appellant was charged with both state and federal offenses.  The charges stemmed from transporting drugs into Virginia, possessing those drugs with the intent to distribute, and for conspiring to do so.  This Court found that the time and situs of appellant's acts were different.  The federal charges, possessing heroin with the intent to distribute and

---

[9] Johnson, 38 Va. App. 137, 562 S.E.2d 341, demonstrated it is not necessary to establish that all four factors must be present.  In Johnson, this Court stated, "assuming time, situs, and victim coincided, the nature of the specific act peculiar to each prosecution is distinct. Id. at 146,

562 S.E.2d at 346.

conspiring to possess heroin with intent to distribute, were based on his possession of those drugs at the train station in Richmond. The state charges, in contrast, were based on his transporting the drugs into the Commonwealth, which occurred the moment he crossed into Virginia with the drugs. Id. at 394-95, 579 S.E.2d at 649-50.

In Jefferson v. Commonwealth, 43 Va. App. 361, 597 S.E.2d 290 (2004), the defendant was found to be carrying a weapon during a traffic stop. He was charged and convicted of both carrying a concealed weapon and possession of a weapon by a convicted felon. This Court found that assuming time, situs, and victim were the same, the nature of the act was different in each prosecution. For the concealed weapon conviction, the Commonwealth had to prove that the defendant had a handgun on his person, hidden from common observation, without the legal authority to do so. Id. at 368-69, 597 S.E.2d at 294. But to prove his guilt for the second charge, the Commonwealth had to show that he had a prior felony conviction and that he knowingly and intentionally possessed or transported the gun. Id.

In this case, appellant's conduct supported convictions for both driving under the influence and aggravated involuntary manslaughter.

First, the time and situs of the acts were different for each offense. The moment appellant began to operate his vehicle while intoxicated, he was guilty of driving under the influence. See Code § 18.2-266. It was not until he struck and killed White, some distance from where he began driving, that he committed manslaughter. Cf. Londono, 40 Va. App. at 395, 579 S.E.2d at 649-50 (holding the appellant was guilty of transporting illegal substances into the Commonwealth the moment he crossed the border into Virginia, which took place well before they were discovered).

Next, each act had a distinct victim. The victim of driving under the influence was the Commonwealth. The victim of manslaughter was Ronald White.

Finally, the nature of the act specific to each prosecution is distinct. Appellant's act of driving with a blood alcohol concentration of at least .15 but not more than .20 predicated his conviction and sentencing for driving under the influence. In the conviction order for driving under the influence, it is clear that appellant was convicted under Code § 18.2-266(i), "while such person has a blood alcohol concentration of 0.08 or more." Appellant was sentenced under Code § 18.2-270, which provides an additional mandatory minimum period of five days incarceration if the defendant's blood alcohol concentration was at least .15 but not more than .20. Thus, the act required for a conviction of driving while intoxicated is not appellant's manner of driving, performance on sobriety tests, etc., but rather only his blood alcohol concentration. In contrast, appellant's act of 1) driving under the influence of alcohol (where he "has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior," Code § 4.1-100) and 2) killing someone as a result of his impaired driving was the evidence used to convict him of aggravated involuntary manslaughter. Although driving was the conduct common and necessary to each offense,[10] the time, situs, victim, and nature of the act were distinct. Because of this, different evidence could be needed to sustain each conviction.

Therefore, appellant's prosecution for aggravated involuntary manslaughter does not violate Code § 19.2-294.

Sufficiency

---

[10] It is established law that "driving an automobile may give rise to several acts and offenses." Estes v. Commonwealth, 212 Va. 23, 24, 181 S.E.2d 622, 624 (1971).

## Standard of Review

In examining a challenge to the sufficiency of the evidence, appellate courts will review the evidence in the light most favorable to the party prevailing at trial and consider any reasonable inferences from the proven facts. Zimmerman v. Commonwealth, 266 Va. 384, 386, 585 S.E.2d 538, 539 (2003). The judgment of the trial court is presumed to be correct and will be reversed only if it is "plainly wrong or without evidence to support it." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).

Appellant contends the Commonwealth did not prove White's death was caused by appellant's driving under the influence. Appellant also argues the evidence did not establish he acted with a reckless disregard for human life.

A proximate cause is "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." Brown v. Commonwealth, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009); see also Doherty v. Aleck, 273 Va. 421, 428, 641 S.E.2d 93, 97 (2007). "There can be more than one proximate cause [of an incident] and liability attaches to each person whose negligent act results in the victim's injury or death." Gallimore v. Commonwealth, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993). Causation is a factual issue left to the jury to decide. Hall v. Commonwealth, 32 Va. App. 616, 632, 529 S.E.2d 829, 837 (2000) (en banc).

Appellant contends that his sending text messages, rather than his driving under the influence of alcohol, caused him to strike and kill White. However, this is belied by the record and by appellant's own testimony. When appellant was asked if he might have seen the object in the road sooner had he not been texting, appellant responded negatively, because it was dark. Appellant also stated that he was not looking at his cell phone the entire time, but rather he was

looking at his phone and looking at the road. Appellant testified that when Rainey alerted him to an object in the road, he immediately put down his phone and looked at the road. He said he swerved, began weaving back and forth, and lost control of the car. Appellant's own words contradict any contention that sending text messages caused the accident.[11]

While appellant's act of sending text messages while driving under the influence was foolhardy and reckless, it was not an intervening cause of the accident. "To be an intervening cause . . . [an incident] must have been an event which [the defendant] could not have foreseen." See Gallimore, 246 Va. at 447, 436 S.E.2d at 425. Any reasonably prudent person would have realized the inherent risk involved with sending text messages while driving under the influence of alcohol. Appellant's use of his cellular phone to send text messages did not break the chain of events initiated by his driving while intoxicated. It merely aggravated his recklessness.

Rainey, appellant's passenger, did not testify that appellant took any evasive action to avoid hitting White. Her testimony was that once she warned appellant that there was something in the road, appellant hit White within a few seconds.

The trier of fact is not required to accept a party's evidence in its entirety, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and disbelieve in part or in whole the testimony of any witness, Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991). The jury was entitled to reject appellant's testimony that he swerved to miss White, and conclude that appellant had time to take evasive action, but because of his intoxicated state, failed to do so.

The impact of alcohol on appellant's behavior is supported by the evidence. Melissa Kennedy, the toxicology expert, testified that appellant's blood alcohol concentration was high

---

[11] The Court directed the parties to address this issue at oral argument, and they did so.

enough that his concentration, attention, vision, judgment, and, most importantly, reaction time would all be negatively affected.

"Drunken driving is not only unlawful in itself, but it tends to make the defendant's dangerous conduct more dangerous." Essex v. Commonwealth, 228 Va. 273, 283, 322 S.E.2d 216, 221 (1984). Appellant's intoxication set in motion a chain of events that led to White's death. See Gallimore, 246 Va. at 447, 436 S.E.2d at 425. The record clearly demonstrates that appellant's intoxication caused him to operate his vehicle in an unsafe fashion. His failure to see White lying in the road or to take any evasive action was the cause of White's death. The fact finder could properly infer that appellant's texting did not cause appellant's inattention to the object in the road. Therefore, we find there was sufficient evidence for the jury to conclude that appellant's driving under the influence of alcohol caused the accident, as well as White's resulting death.

Appellant also alleges the Commonwealth failed to prove criminal negligence. This argument is without merit. "Conduct that is 'gross, wanton and culpable' demonstrating a 'reckless disregard for human life' is synonymous with 'criminal negligence.'" Riley v. Commonwealth, 277 Va. 467, 483, 675 S.E.2d 168, 177 (2009) (quoting Jones v. Commonwealth, 272 Va. 692, 701, 636 S.E.2d 403, 408 (2006)).

A defendant's "level of intoxication is 'relevant to a determination of the degree of the defendant's negligence: whether ordinary, gross, or wanton.'" Id. at 484, 675 S.E.2d at 177-78 (quoting Essex, 228 Va. at 283, 322 S.E.2d at 221-22). "It may serve to elevate the defendant's conduct to the level of 'negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" Id. at 484, 675 S.E.2d at 178 (quoting Essex, 228 Va. at 283, 322 S.E.2d at 222).

In the instant case, we look to appellant's high blood alcohol concentration, which was higher than the legal limit. This fact by itself demonstrates criminal negligence and justifies a finding that appellant's conduct was gross, wanton, and culpable. See Stevens v. Commonwealth, 272 Va. 481, 488, 634 S.E.2d 305, 310 (2006) (concluding that a high level of intoxication supported a finding of criminal negligence).

In addition, the record contains numerous other facts to support the jury's finding. Appellant was driving under the influence and sending text messages on a dark, rainy night. He failed to take any evasive action to avoid hitting White. His behavior demonstrated a disregard for human life. The jury correctly found evidence of criminal negligence.

## CONCLUSION

Driving under the influence and aggravated involuntary manslaughter are not the same offense. There was no violation of double jeopardy or Code § 19.2-294. The trial court properly denied appellant's motion to dismiss the indictment. Further, the evidence was sufficient to prove that appellant drove under the influence and that this was a cause of the accident and decedent's death. Finally, the record supports the jury's finding of criminal negligence. Therefore, we affirm.

Affirmed.

Powell, J., concurring.

I write separately in this opinion because I concur in the result but respectfully disagree with the majority's double jeopardy analysis as it pertains to the nature of the prosecution. In footnote 5 of its opinion, the majority assumes without deciding that Davis's prosecutions were successive rather than simultaneous. I would hold that Davis's prosecutions were simultaneous.

"No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. "The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) 'It protects against a second prosecution for the same offense after acquittal. [(2) It] protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense.'" Illinois v. Vitale, 447 U.S. 410, 415 (1980) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted)). The first and second guarantees are only applicable to a second proceeding brought after an acquittal or conviction, i.e., a successive prosecution. The third guarantee, however, is relevant in simultaneous prosecutions. Thus, I believe that we must begin our analysis by determining whether the prosecutions were successive or simultaneous before we determine whether Davis was twice subjected to prosecution for the same offense following a conviction or whether he received multiple punishments for one offense.

In Phillips v. Commonwealth, 257 Va. 548, 549-50, 514 S.E.2d 340, 341 (1999), the Supreme Court of Virginia considered "whether Code § 19.2-294 bar[red] a defendant's conviction on two felony charges of selling marijuana on school property, after he had been convicted in the general district court on two misdemeanor charges of distribution of marijuana

- 17 -

based on the same acts."[12]  There, two arrest warrants were issued for appellant charging him

with the felony offenses of selling marijuana on school grounds.  Id. at 550, 514 S.E.2d at 341.

> One week later, two more arrest warrants were issued against
> Phillips charging him with misdemeanor offenses of distributing
> less than a half-ounce of marijuana . . . , in violation of Code
> § 18.2-248.1, based on the same acts as the felony charges.
>    On October 29, 1996, Phillips appeared in the General
> District Court of Russell County on all four charges.  At that
> hearing, Phillips was tried and convicted on the two misdemeanor
> charges and waived a preliminary hearing on the two felony
> charges.  The grand jury later indicted Phillips on the two felony
> charges.

Id.  In determining whether Phillips's prosecutions were successive or simultaneous, the

Supreme Court of Virginia defined "prosecution" as "the process in which an accused is brought

to justice from the time a formal accusation is made through trial and final judgment in a court of

appropriate jurisdiction."  Id. at 553, 514 S.E.2d at 343; see Sigmon v. Commonwealth, 200 Va.

258, 267, 105 S.E.2d 171, 178 (1958) (defining "prosecution" as "the means adopted to bring a

supposed criminal to justice and punishment by due course of law, and consists of a series of

proceedings from the time formal accusation is made by swearing out a warrant, the finding of

an indictment or information in a criminal court, the trial, and final judgment").[13]  The Supreme

Court held:

---

[12] Although in Phillips the appellant only argued that his prosecutions were successive and thus constituted statutory double jeopardy under Code § 19.2-294, the analysis defining what is a successive or simultaneous prosecution would logically be the same regardless of whether the double jeopardy challenge is a constitutional or statutory one as something either is or is not a successive prosecution.

[13] Numerous other jurisdictions have applied similar definitions of "prosecution."  See Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 271 (5th Cir. 1976) (citing the definition of "prosecution" used in Sigmon); United States v. Gonware, 415 F.2d 82, 84 (9th Cir. 1969) (defining "prosecution" as "the following up or carrying on of an action or suit already commenced until the remedy be attained" and concluding that a "[p]rosecution is not completed in a criminal case until the defendant begins to serve his sentence"); Lupton v. Chase Nat. Bank,

The procurement of arrest warrants on different dates does not automatically trigger the successive prosecution bar of Code § 19.2-294. Since the bar is intended to protect an accused from the "hazards of vexatious, multiple prosecutions," the bar does not preclude the prosecution of charges in a single, evidentiary hearing, even though the arrest warrants were obtained on different dates. In such a situation, the accused is not subjected to a greater burden than when the charges are brought simultaneously and heard together. The accused conducts his defense based on the same trial sequence and faces the same potential for anxiety, expense, and punishment.

Phillips, 257 Va. at 553, 514 S.E.2d at 343. The Court ruled that Phillips's "prosecutions were simultaneous, not successive, because they were joined in a single evidentiary hearing in the general district court." Id. The Court reached this conclusion even though Phillips waived a preliminary hearing on the two felony charges. Id. "Thus, the later events in the circuit court on the felony charges were merely a continuation of the same prosecution." Id.

Over the course of time, this Court and the Supreme Court of Virginia have decided various factual scenarios along the prosecution continuum as satisfying the definition of simultaneous prosecutions. See Bradshaw v. Commonwealth, 228 Va. 484, 491-92, 323 S.E.2d 567, 571-72 (1984) (felony charges initiated at separate times but final judgments reached in the

89 F. Supp. 393, 397 (D. Neb. 1950) (considering three definitions of "prosecution" ((1) "The instituting and carrying forward of a judicial proceeding to obtain some right or to redress and punish some wrong[;]" 2) "commencing, conducting and carrying a suit to a conclusion in a court of justice[;]" and 3) "the following up or carrying on of an action or suit already commenced until the remedy be attained; the act of conducting or waging a proceeding in court; the institution and carrying on of a suit in a court of law or equity, to obtain some right, or redress some . . . wrong") before determining that a "prosecution" terminates when an award is final); State v. Cardwell, 609 P.2d 1230, 1232-33 (Mont. 1980) (quoting the definition of "prosecution" used in Sigmon); State v. Harvey, 187 S.E.2d 706, 717 (N.C. 1972) (defining "prosecution" as "the series of proceedings had in the bringing of an accused person to justice, from the time when the formal accusation is made, by the filing of an affidavit or a bill of indictment or information in the criminal court, until the proceedings are terminated"); State v. Wiese, 201 N.W.2d 734, 737 (Iowa 1972) (citing the definition of "prosecution" used in Sigmon); State v. Williams, 189 So. 112, 114 (La. 1939) (defining a "prosecution" as "the series of proceedings had in the bringing of an accused person to justice, from the time when the formal accusation is made, by the filing of an affidavit or a bill of indictment or information in the

same proceeding); <u>Phillips</u>, 257 Va. at 553, 514 S.E.2d at 343 (misdemeanor and felony charges initiated at separate times with the misdemeanor resolved in general district court and the preliminary hearing waived on the felony); <u>Freeman v. Commonwealth</u>, 14 Va. App. 126, 128-29, 414 S.E.2d 871, 873 (1992) (misdemeanor and felony charges initiated at the same time, but out of necessity, the misdemeanor was concluded before the felony was concluded in circuit court). Davis's case presents yet another set of facts, i.e., misdemeanor charges brought at one time and felony charges brought separately but prior to final judgment in the misdemeanor case.[14] Based on the broad definition of "prosecution" employed in <u>Phillips</u> and other cases, i.e., "'prosecution' is the process in which an accused is brought to justice from the time a formal accusation is made through trial and final judgment in a court of appropriate jurisdiction[,]" 257 Va. at 553, 514 S.E.2d at 343, I believe that Davis's prosecutions were simultaneous as his prosecution for aggravated involuntary manslaughter commenced with his indictment by a grand jury before his prosecution for driving while intoxicated concluded with the final judgment in general district court. Just as the "simultaneous initiation of criminal charges is not the exclusive factor in determining whether those charges have been resolved in a simultaneous prosecution[,]" <u>id.</u> at 552, 514 S.E.2d at 342-43, the prosecution of the offenses in a single evidentiary hearing is an "overriding" but not exclusive factor. Therefore, I would find that where the two prosecutions overlap at any time before one reaches final judgment, the prosecutions are simultaneous and not successive.

Because Davis's prosecutions were simultaneous, our holding in <u>Dalo v. Commonwealth</u>, 37 Va. App. 156, 554 S.E.2d 705 (2001), controls. In <u>Dalo</u>, the appellant was similarly charged

criminal court, until the proceedings are terminated").

[14] Here, a grand jury indicted Davis for aggravated involuntary manslaughter on April 6, 2009. Thereafter, he was convicted for driving while intoxicated on April 8, 2009.

with driving while intoxicated and involuntary manslaughter in a simultaneous prosecution.  Id. at 160-61, 554 S.E.2d at 707.  This Court held that Blockburger v. United States, 284 U.S. 299

(1932), is not controlling where the legislative intent is clear. Id. at 163-64, 554 S.E.2d at 708-09. This Court concluded that the General Assembly intended to allow multiple punishments for involuntary manslaughter and driving while intoxicated. Id. at 166-69, 554 S.E.2d at 709-11.

In this case, Davis correctly conceded that "the case law is clear that when § 18.2-266 and § 18.2-36.1 are tried simultaneously at any point in the proceedings, there is no Fifth Amendment violation." Therefore, I would hold that Davis's argument that his multiple convictions for aggravated involuntary manslaughter and driving while intoxicated constitute constitutional double jeopardy is without merit. Given that I would hold that the prosecutions are simultaneous, I would conclude that Code § 19.2-294 has no applicability because, by its terms, it only applies when the charges are tried successively. Phillips, 257 Va. at 552, 514 S.E.2d at 342 (stating that "[b]y its terms, the statute does not apply to simultaneous prosecutions, because only a prior *conviction* for the violation of an act will bar a later prosecution for the same act"). I join the majority in analyzing the sufficiency of the evidence.