COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia


DWAYNE GRAY MILLER, JR.

                                                     MEMORANDUM OPINION* BY
v.        Record No. 0193-16-2                       JUDGE RANDOLPH A. BEALES
                                                     JULY 18, 2017
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF HANOVER COUNTY
                               J. Overton Harris, Judge

          Miriam Airington (Airington, Andraos, & Rockecharlie PLLC, on
          briefs), for appellant.

          David M. Uberman, Assistant Attorney General (Mark R. Herring,
          Attorney General, on brief), for appellee.


       At the conclusion of a three-day jury trial, Dwayne Miller ("appellant") was convicted of

aggravated involuntary manslaughter in violation of Code § 18.2-36.1(B) and felony hit-and-run

in violation of Code § 46.2-894.  Appellant raises four issues on appeal:  (1) that the evidence

was insufficient to establish that appellant caused the deceased's death, (2) that the deceased's

toxicology results should have been admitted into evidence, (3) that the trial court erred when it

instructed the jury that appellant's degree of intoxication was relevant to establish appellant's

criminal negligence because "the instruction was confusing and was not supported by the

evidence," and (4) that this Court should invoke the ends of justice exception to Rule 5A:18 and

conclude that the trial court improperly instructed the jury when including in a jury instruction

the language that a conviction "does not require proof beyond all possible doubt."

_____

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

On the evening of May 1, 2014, the deceased, Jason Bailey ("Bailey"), responded to a request for a tow truck on Interstate 295 in Hanover County, where he was then struck and killed. Bailey was a tow truck driver whose company had been called by Avonia Gregory ("Gregory"), a motorist with a flat tire. She testified that Bailey parked his truck "perfectly straight" on the shoulder, and the truck's lights were "flashing." Pictures taken at the scene and admitted into evidence show the upper bar light of the truck flashing. Gregory testified that Bailey was "polite, professional, concerned and appeared to know what he was doing." Gregory then got a ride to the car dealership and left Bailey with her car to follow behind with the tow truck.

Another witness, Ein Conrad ("Conrad"), testified that he was traveling on I-295 and "[i]t was getting pretty dark." Conrad noticed the driver of a Ford Explorer, later identified as appellant, driving "erratically . . . speeding and swerving in and out of traffic." Conrad was driving next to and behind appellant's vehicle, which was in the far right lane, closest to the right shoulder. Conrad could see Bailey's tow truck stopped on the shoulder with "the bar light on top of the flatbed" flashing, and knew "something had happened" when he saw that the "taillights of [appellant's Explorer] were swerving . . . in front of the tow truck." Kyreena Cromleigh ("Cromleigh"), Conrad's fiancée and passenger, said that she knew right away that someone had been hurt because "there was blood everywhere." Conrad pulled his car over off the road and stopped. As Conrad approached the tow truck, he saw Bailey's body lying beside it. He testified that he did not bother checking for a pulse, because Bailey "wouldn't have survived that."

Cromleigh testified that when they pulled over, she observed an SUV crashed beyond the tow truck and she saw a man stumble out of the SUV and walk unsteadily away from his SUV. Residents from the neighborhood adjacent to the crash scene testified to seeing appellant walking

in the neighborhood and in residents' yards shortly after hearing the crash. Stacy Dixon ("Dixon"), a neighborhood resident, testified that she was outside her house when she heard a man scream, "Hey!" – and then heard a loud crash. She described the crash as "the loudest sound that I have heard." Some time later, when she was inside her home again, she turned on some outside lights to illuminate her backyard deck. Upon turning on the lights, she observed a man sitting on her back deck. The man had blood on him and was sitting there staring at the sky. At trial, Dixon identified the man in her backyard as appellant.

The police encountered appellant in the adjacent neighborhood and transported him back to the scene of the accident. They described him as bruised, bloodied, and displaying delayed movements and speech. When asked by police, appellant said that he had consumed "a lot" of alcohol and that he was driving "45 degrees" at the time of the collision. At trial, Dr. James Hutchings, a forensic toxicologist, testified that, given that Miller's blood alcohol content ("BAC") was 0.181 more than three-and-a-half hours after the collision, "[i]t most likely would have been higher" at the time of impact. He stated, "Commonly, you remove 0.01 to 0.02 percent per weight per volume per hour." When asked about the effects on a person's cognition at a BAC of 0.181, Dr. Hutchings replied, "[T]here would be severe disorientation, slurred speech. I would expect there to be some large gross motor function, inability to control your legs, loss of balance. I would also expect there to be severely slowed psychomotor function. Expect the ability to react to the outside world would be severely slowed. There would also be some severe visual acuity issues." Dr. Hutchings also testified that if someone were driving with a BAC of 0.181 and he *was* able to perceive an object in his path, he "would not be able to react in time to avoid" striking it. Dr. Hutchings also opined that a driver with such an elevated BAC could lose consciousness and may not "even be able to perceive or react at all."

The medical examiner, Dr. Deborah Kay, who performed the autopsy of Bailey testified to his various injuries, and concluded that the cause of death was "[b]lunt force injuries to the head, neck and torso." Upon cross-examination, Dr. Kay testified that any one of the injuries or any combination of the injuries could have caused Bailey's death – and that there was no way to determine how many times he was struck.

Blood taken from appellant's vehicle was matched to the deceased. The pictures of appellant's Ford Explorer depict blood spatter and fragments on the SUV, as well as significant damage and some blood spatter on the front passenger side (where the Explorer would have initially impacted Bailey and his tow truck). The pictures also show fragments from the red tow truck embedded in the side of the silver Ford Explorer. The record does not reveal evidence that any other car collided with the tow truck. At trial, Sergeant Anthony J. Puckett of the Virginia State Police testified in his capacity as a member of the Virginia Crash Reconstruction Team, a special team within the State Police. Sergeant Puckett had special training in interpreting crash data from vehicles. Sergeant Puckett testified that appellant's vehicle had an "event data recorder" which recorded the vehicle's response to its crash. According to the event data recorder, appellant was not wearing a seatbelt at the time of the crash. Puckett concluded that appellant did not try to slow down or steer away from the crash before impact.

Appellant attempted to have a portion of Bailey's toxicology report admitted into evidence, which the trial court did not allow. Appellant proffered that the report would have established that Bailey had a level of 0.0046 milligrams per liter of tetrahydrocannabinol ["THC"], the active component in marijuana, in his system at the time of his death. Appellant proffered testimony that the effects can occur at any concentration and that common effects are inattentiveness, time and space distortion, and short-term memory impairment. However, appellant also had an opportunity to question the Commonwealth's expert witness about the

THC found in Bailey's system. The expert could not testify conclusively to what the amount of .0046 milligrams per liter meant for Bailey:

> As far as the quantity goes, we don't normally associate the level of effects with the quantity. Typically, I use the quantity as a rough estimation of the time of use, and so I typically use a threshold of 0.005 and greater is indicative of more recent use, two to three hours. However, anything below that is more indicative of less recent use, probably greater than three or four hours from the time of use.
>
> So in this case, 0.0046 is below that threshold. It's indicative of that. I try to use the word indicative because it's not a hard and fast rule. It's more of a rough rule based upon the concentration of the marijuana smoked, how much was smoked or even if it was smoked or eaten or all the different forms of ingestion we have now. So in this case, it's more of an indicator of time of use.

The prosecution asked of the expert witness, "So if I understand your testimony, Dr. Hutchings, just seeing this number [.0046] doesn't tell you whether somebody is actually under the influence of marijuana?" Dr. Hutchings replied, "Correct." The trial court found of the proffered testimony and evidence that "the probative value was outweighed by the prejudice and potential confusion to the jury."

## II. ANALYSIS

Appellant raises four issues on appeal, which this Court will address in turn. First, appellant argues that the trial court erred when it denied appellant's motion to strike the evidence because the Commonwealth failed to prove that appellant caused the deceased's death. Second, appellant argues that the trial court erred in excluding toxicology evidence from Bailey indicating that Bailey "had an illegal substance in his system at the time of his death, because such evidence was relevant to the issue of causation of death." Third, appellant argues that the trial court erred in instructing the jury that the degree of intoxication was relevant to determining whether appellant's conduct was criminally negligent because the instruction was confusing and not supported by the evidence. Fourth, appellant asks us to invoke the ends of justice exception

to Rule 5A:18 to find that the trial court erred when it instructed the jury "This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence; however, suspicion or probability of guilt is not enough for a conviction. There is no burden on the defendant to produce any evidence."

### 1. *Causation*

Appellant argues that the Commonwealth failed to prove that appellant proximately caused Bailey's death.

When considering the sufficiency of the evidence presented below, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

"A proximate cause is 'an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred.'" Rich v. Commonwealth, 292 Va. 791, 800, 793 S.E.2d 798, 803 (2016) (quoting Brown v. Commonwealth, 278 Va. 523, 529, 685 S.E.2d 43, 46 (2009)).

Dixon testified that on the evening of May 1, 2014, she was outside her house when she heard a man scream, "Hey!" and she then heard a loud crash. Eyewitnesses who were also traveling on the road with appellant's vehicle testified "that there was blood everywhere" after they observed a collision between the tow truck and the SUV. Forensic evidence shows that the SUV hit the tow truck. Bailey's body was found partially in the road, lying beside the tow truck. Forensic evidence also shows Bailey's blood on the side of the SUV – the same side that collided with the tow truck.

We disagree with appellant's assertion that, under the facts of this case, the Commonwealth's evidence only amounted to conjecture as to how the accident occurred and that it is unclear whether appellant actually caused Bailey's death. "We have repeatedly held that the factfinder may draw reasonable inferences from proven facts." Id. "[I]n a circumstantial evidence case, such as the case currently before us, the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt . . . ." Ervin v. Commonwealth, 57 Va. App. 495, 505, 704 S.E.2d 135, 140 (2011) (en banc). A reasonable factfinder could have inferred from the evidence presented at trial that appellant was a direct and proximate cause of Bailey's death because appellant's SUV not only collided with Bailey's tow truck but appellant also drove his SUV into Bailey – who was standing by the truck – with enough force to kill him.

However, it is immaterial whether appellant's car fatally struck Bailey – or whether a subsequent car running over Bailey once he was in the road caused the fatal injury. The Commonwealth was only required to prove that appellant's vehicle was a *proximate* cause of Bailey's death. "[A]n intervening event, even if a cause of the harm, does not operate to exempt a defendant" from criminal liability if the intervening event was put into operation by the defendant's criminally negligent acts. Noakes v. Commonwealth, 280 Va. 338, 349, 699 S.E.2d

284, 290 (2010) (quoting Gallimore v. Commonwealth, 246 Va. 441, 447, 436 S.E.2d 421, 425 (1993)).

Therefore, we hold that a rational trier of fact could have concluded that appellant proximately caused Bailey's death.

### 2. *Toxicology Report*

Appellant argues that the trial court erred when it refused to admit Bailey's toxicology results into evidence because, as appellant contends, Bailey's potential impairment was relevant to the issue of causation. Even assuming without deciding that the trial court's ruling was erroneous, we conclude that such error was nevertheless harmless.

As this case does not involve an alleged constitutional error, we apply the statutory standard provided by Code § 8.01-678 to determine whether the non-constitutional error was harmless. Code § 8.01-678 provides, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

"Under this standard, a non-constitutional error in a criminal case is harmless '[i]f, when all is said and done, . . . the error did not influence the jury, or had but slight effect.'" Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (quoting Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005)). As the Supreme Court has stated in Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001), "In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the [fact finder]. If it did not, the error is harmless."

When we look at the trial as a whole, we conclude that the toxicology report could not have substantially influenced the jury. Appellant proffered evidence that Bailey had THC in his blood at his time of death and that marijuana was located in the tow truck. Appellant proffered no additional evidence to show that Bailey was impaired at the time of the accident. The expert witness specifically testified that he could not infer impairment from the level of THC in Bailey's blood or that the marijuana had even been ingested within the preceding three or four hours before Bailey's death. At trial, there was a great deal of evidence to show that Bailey was acting cautiously and was not impaired. Viewing the evidence in the light most favorable to the Commonwealth, as the party that prevailed below, the evidence showed that Bailey parked his tow truck on the side of the road, he turned on the tow truck's hazard lights, and he wore a safety vest while handling Avonia Gregory's car. Moreover, Ms. Gregory testified that Bailey was "polite, professional, concerned and appeared to know what he was doing."

Even if the trial court had allowed the toxicology findings and the testimony that marijuana was found in the tow truck into evidence, the expert specifically testified that he *could not* opine, based on .0046 milligrams per liter of THC in Bailey's system, that Bailey was under the influence of marijuana at the time he died.[1] Thus, even if the trial court erred in excluding the toxicology report, such error was harmless because the ultimate medical opinion which appellant sought to place before the jury – that Bailey was impaired – would have had to have been rejected. Thus, the evidence that appellant put forward regarding whether Bailey might have been under the influence of marijuana could not have had more than "slight effect" because

---

[1] In fact, not only did the expert indicate it was unclear whether Bailey was under the influence of marijuana, but the evidence showed that Bailey probably had not ingested marijuana for at least three or four hours before his death. Dr. Hutchings testified that "anything below [.005 milligrams per liter] is more indicative of less recent use, probably greater than three or four hours from the time of use."

appellant's proffered evidence simply does not show impairment. Therefore, we conclude that appellant had a "fair trial on the merits" and that the error, if any, was harmless.

### 3. *Jury Instruction on Degree of Intoxication*

Appellant contends that there was no "context" provided at trial for the jury to determine, without additional evidence, that appellant's BAC was sufficiently elevated to support a finding of criminal negligence. The instruction that the trial court accepted read, "The degree of intoxication is a circumstance relevant to a determination of the question whether, in light of all other circumstances, the defendant's driving conduct was so gross, wanton and culpable as to show a reckless disregard for human life."

A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion. Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009).

> The reviewing court's sole responsibility is to ensure that the law has been clearly stated in the instructions and that they cover all the issues that the evidence fairly raises. In deciding whether an instruction was appropriate, the appellate court views the facts in the light most favorable to the instruction's proponent.

Howsare v. Commonwealth, __ Va. __, __, 799 S.E.2d 512, 515 (2017) (internal citations omitted).

We begin by noting that the language of the jury instruction is an accurate statement of the law. See Beck v. Commonwealth, 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975) ("[T]he degree of intoxication is a circumstance relevant to a determination of the question whether, in light of all other circumstances, the act of driving an automobile was such an 'improper performance of a lawful act' as to constitute negligence 'so gross and culpable as to indicate a callous disregard of human life'.").

Most importantly, appellant's argument rests on a faulty premise – that the jury instruction was not proper because appellant's BAC level was the *only* factor possible for the jury to consider. As the Commonwealth correctly points out, there was plenty of evidence in the record pointing to appellant's intoxication in addition to appellant's extremely high BAC. Appellant was observed "driving erratically" before the accident, appellant was "swerving in and out of traffic," and appellant did not use the brakes on his SUV or attempt to steer away from the tow truck before impact. The Commonwealth also presented witnesses who testified that appellant exhibited erratic behavior, that he smelled of alcohol, that he had slurred speech, that he was stumbling at the scene of the accident, that he had red eyes, and that he made nonsensical statements.[2]

Therefore, we reject appellant's argument that the jury instruction was not supported by the evidence. Accordingly, we hold that the trial court did not err in submitting this instruction to the jury because "the instructions, taken as a whole, stated the law clearly and covered all issues fairly raised by the evidence." Howsare, __ Va. at __, 799 S.E.2d at 515.

4. *Jury Instruction on Proof Beyond a Reasonable Doubt*

In his fourth assignment of error, appellant argues that a jury instruction, proffered by his attorney at trial, was erroneous. The jury instruction at issue reads in its entirety:

> The defendant is presumed to be innocent. You should not assume the defendant is guilty because he has been charged and he is on trial. This presumption of innocence remains with the defendant throughout the trial and is enough to require you to find the defendant not guilty unless and until the Commonwealth proves

---

[2] We note that other opinions from our Court have held that evidence of intoxication *alone* is sufficient to sustain a conviction for aggravated involuntary manslaughter. In Davis v. Commonwealth, 57 Va. App. 446, 464, 703 S.E.2d 259, 267 (2011) (italics added), this Court considered the appellant's "high blood alcohol concentration, which was higher than the legal limit," as a factor, which "*by itself* . . . justifies a finding that appellant's conduct was gross, wanton, and culpable." However, because there *was* additional evidence in this case, we need not determine whether such a jury instruction would be accurate if the only evidence of criminal negligence is intoxication.

each and every element of the offense beyond a reasonable doubt. *This does not require proof beyond all possible doubt, nor is the Commonwealth required to disprove every conceivable circumstance of innocence*; however, suspicion or probability of guilt is not enough for a conviction. There is no burden on the defendant to produce any evidence.

(Italics added). Appellant contends that the italicized language (especially "does not require proof beyond all possible doubt") could be misleading to a jury and that "the Supreme Court of Virginia has repeatedly discouraged trial courts from elaborating on the definition of reasonable doubt, for fear of muddying the waters for the jury." Opening Brief at 18. However, appellant also acknowledges *that trial counsel did not make a contemporaneous objection to this jury instruction*, and asks this Court to reach the merits of this question through the ends of justice exception to Rule 5A:18.

As the Commonwealth appropriately points out, appellant not only failed to object *but actually proffered this instruction to the trial court himself.*[3] Thus, the Commonwealth, relying on Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009), and Alford v. Commonwealth, 56 Va. App. 706, 696 S.E.2d 266 (2010), argues that appellant has taken successive inconsistent positions in the course of litigation from which he now seeks to benefit on appeal. In Alford, 56 Va. App. at 709-10, 696 S.E.2d at 267-68, this Court held:

> The approbate-reprobate doctrine is broader and more demanding than Rule 5A:18. The very fact that Alford "invited the error" (by agreeing the assault and battery jury instruction should be given) renders Rule 5A:18's ends-of-justice exception inapplicable. It can hardly be a "grave injustice" to a defendant's essential rights for a trial court to give an agreed-upon jury instruction on assault and battery (a misdemeanor with a maximum sentence of twelve months) in a case where the defendant is charged with attempted rape (a felony with a sentencing range of two to ten years).

---

[3] Appellant does not dispute that he proffered the jury instruction. See Reply Brief at 5-6.

Similarly, in this case appellant asked the trial court to give this Virginia Model Jury Instruction No. 2.100 to the jury. Therefore, appellant cannot show that there is any "grave injustice" to his essential rights when the trial court submitted an agreed-upon jury instruction that accurately states the standard for the jury to apply.

Therefore, we conclude that we cannot invoke the ends of justice exception to Rule 5A:18 because appellant has failed to show a grave injustice by asking for the very jury instruction about which he now complains on appeal.

## III. CONCLUSION

In summary, this Court holds that a rational factfinder certainly could have concluded that appellant's acts caused Bailey's death. We find that, even if the toxicology evidence of THC in Bailey's system was erroneously excluded, that exclusion of it from evidence was harmless error because the expert acknowledged that there was no evidence from the toxicology findings that showed whether Bailey was impaired by the THC. We conclude that the jury instruction on the degree of intoxication as a factor to consider for criminal negligence was properly given to the jury because it stated the law clearly and covered all of the issues fairly raised. Finally, we decline to invoke the ends of justice exception to Rule 5A:18 because we find that appellant did not suffer a grave injustice because he was actually the individual who offered the jury instruction on reasonable doubt before complaining about it now on appeal. Therefore, for all of these reasons, we affirm appellant's convictions for aggravated involuntary manslaughter in violation of Code § 18.2-36.1(B) and felony hit-and-run in violation of Code § 46.2-894.

Affirmed.

- 13 -